[No. 63916-1-I.   Division One.   February 7, 2011.]

LEROY BUSHNELL, *as Personal Representative, Appellant*, v. MEDICO INSURANCE COMPANY ET AL., *Respondents*.

*Randall C. Johnson Jr.* (of *Badgley Mullins Law Group PLLC*), for appellant.

*Steven T. Russell* and *Robert W. Swerk II* (of *Keolker & Swerk*); and *Celeste T. Stokes* (of *Hollenbeck, Lancaster, Miller & Andrews*), for respondents.

¶1 SCHINDLER, J. — Leroy Bushnell, as the personal representative of the estate of Evelyn Bushnell (collectively Bushnell), appeals summary judgment dismissal of the lawsuit against Medico Insurance Company of Nebraska for denial of coverage under a nursing care insurance policy issued to Evelyn Bushnell in 1987. Medico denied Bushnell's claim for nursing care benefits on the grounds that the three-day prior hospitalization requirement was not met, and coverage lapsed for nonpayment. On cross motions for summary judgment, the trial court ruled that as a matter of law, the three-day hospital stay requirement is valid and

Bushnell is not entitled to coverage. The court also ruled Medico's denial of coverage was reasonable and not in bad faith, and dismissed Bushnell's lawsuit with prejudice. We reverse and remand.

## FACTS

¶2 The facts are not in dispute.[1] In October 1986, Leroy Bushnell, as the attorney in fact and on behalf of his mother Evelyn Bushnell, submitted an application to Medico for a nursing care insurance policy. In January 1987, Medico issued a "Skilled and Intermediate Nursing Policy" to Evelyn Bushnell effective October 9, 1986.

¶3 The policy provides benefits for medically required skilled and intermediate nursing care for an unstable health condition. The "Schedule" sets forth the skilled and intermediate nursing care benefits with a lifetime maximum of $190,000. As a condition of receiving nursing benefits, the policy requires confinement in a qualified nursing facility that is recommended by a physician "within 14 days after required hospital confinement of at least three days in a row" for the "continued treatment of the condition(s) for which you were in the hospital."

¶4 The policy states that "[a]s long as you pay the renewal premium . . . on the date it is due or during the 31-day grace period," Medico "cannot refuse to renew your policy unless we do the same to all policies of this form issued to persons of your class . . . in your state." The policy also states that the "provisions of the policy must conform with the laws of the state in which you reside on the Policy Date. If any do not, this clause amends them so that they do conform."

¶5 In November 1986, the legislature enacted the Long-Term Care Insurance Act (Act), chapter 48.84 RCW. The Act

---

[1] Medico filed a motion to strike the citations in the appellant's brief to the "Declaration of Leroy Bushnell" in support of the motion for reconsideration, and to Bushnell's trial brief and attached exhibits. We grant the motion to strike. These pleadings were not considered by the court on summary judgment. RAP 9.12.

governs the sale and content of long-term insurance policies. Effective January 1, 1988, the regulations implementing the Act prohibit insurance companies from requiring prior hospitalization as a condition of receiving nursing care benefits.[2]

¶6 Bushnell timely paid renewal premiums for more than 20 years. In December 2006, when Evelyn was no longer able to care for herself, she went to live with her son Leroy. On February 1, Leroy paid the renewal premium for the 60-day period from January 1, 2007 through February 28, 2007.

¶7 On February 21, 2007, Evelyn's doctor concluded that she had suffered a stroke the previous December and needed full-time skilled nursing care. On February 24, Evelyn was admitted to a skilled nursing care facility, Lake Vue Gardens Convalescent Center. On February 24, Leroy submitted a "Claimant's Proof of Loss" for nursing care benefits to Medico.

¶8 On June 20, Medico denied Bushnell's claim for nursing care benefits because Evelyn did not comply with the three-day prior hospitalization requirement and coverage under the policy lapsed for nonpayment. The letter states, in pertinent part:

> Per policy terms, benefits for skilled or intermediate care will be payable as long as the insured meets that [sic] following conditions:
>
> 1.) Be in a nursing facility;
> 2.) Be recommended by a physician;
> 3.) Start within 14 days after required hospital confinement of at least 3 days in a row;
> 4.) Be for the continued treatment of the conditions for which they were in the hospital.
>
> Based on the documentation received from Lake Vue Gardens, you were admitted directly in the nursing facility from

---

[2] WAC 284-54-150(7).

your home. Since you did not have a prior hospitalization for at least 3 days before your admit into Lake Vue Gardens, the policy requirements have not been met and benefits cannot be provided at this time.

Also, please be advised that your long term care policy lapsed on 03-01-07 as we did not receive a renewal premium from you.

¶9 On October 12, Bushnell's attorney wrote a letter asking Medico to reconsider the decision to deny coverage for nursing care benefits. The letter cites the regulation prohibiting an insurer from requiring hospitalization as a condition to receiving benefits. The letter also cites the provision in the policy that automatically amends the terms of the policy to conform with the laws of the state of Washington.

¶10 Relying on the language of the Act that states, "[T]his chapter shall apply to policies and contracts issued on or after January 1, 1988," Medico denied Bushnell's claim for nursing care benefits.

Because the policy was issued prior to the effective date of either the statute or regulation, it did conform with the laws of the state of Washington on the policy date.

¶11 On November 9, Bushnell filed a notice of violation of the insurance fair conduct act, chapter 48.30 RCW, with the insurance commissioner. On November 28, the commissioner issued notice of closure.

¶12 As the attorney in fact and on behalf of his mother, Leroy Bushnell sued Medico for denial of coverage. Bushnell sought a declaratory judgment that the prior three-day hospitalization provision in the policy was invalid under the Act and contrary to public policy. Bushnell alleged causes of action for breach of contract, violation of the Consumer Protection Act,[3] violation of the insurance fair conduct act, and bad faith denial of coverage.[4]

---

[3] Ch. 19.86 RCW.

[4] After Evelyn died in August 2008, Leroy pursued the lawsuit as personal representative of the Estate.

¶13 Bushnell filed a motion for partial summary judgment. Bushnell argued that as a matter of law, the three-day hospital stay requirement was invalid, and Medico acted in bad faith in denying coverage. Bushnell asserted that when Evelyn renewed the policy after January 1, 1988, the effective date of the regulations implementing the Act, the three-day hospital stay condition no longer applied.

¶14 Medico filed a cross motion for summary judgment. Medico argued that the policy was not subject to the Act because the three-day hospital stay requirement was valid when the policy was issued. Medico also argued that the terms of the policy did not change because "this policy was simply a continuation of the policy originally issued on October 9, 1986, and thus never became a policy 'issued on or after January 1, 1988' [under] RCW 48.84.910." Without regard to the validity of the three-day hospital stay requirement, Medico argued that coverage was properly denied because the policy lapsed for nonpayment.

¶15 Before the hearing on the cross motions for summary judgment, the court asked the parties to address a Washington State Supreme Court case that addresses the effect of a later enacted law on coverage under an insurance policy.[5]

¶16 Following the hearing, the court granted Medico's motion for summary judgment and dismissed Bushnell's lawsuit with prejudice. The court ruled that "[t]he hospital stay requirement found in Ms. Bushnell's policy is valid and Ms. Bushnell is not entitled to coverage as a matter of law." The court also ruled that "Medico's denial of coverage was reasonable and not in bad faith." The court denied Bushnell's motion for reconsideration.

¶17 Bushnell appeals the order granting summary judgment and the order denying the motion for reconsideration.

---

[5] *Tebb v. Cont'l Cas. Co.*, 71 Wn.2d 710, 430 P.2d 597 (1967).

## ANALYSIS

¶18 Bushnell contends the trial court erred in ruling the three-day hospital stay is valid and Medico did not act in bad faith in denying coverage. Bushnell argues that when Bushnell renewed the policy after the effective date of the regulations implementing the Act in January 1988, the three-day hospital stay requirement was eliminated and no longer applied. Medico asserts that neither the Act nor the regulations apply retroactively, the Act does not apply to renewals under the terms of the policy, and the three-day prior hospitalization requirement remained in effect.[6]

¶19 We review summary judgment de novo. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). Summary judgment is proper when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

¶20 Interpretation of an insurance contract is a question of law that we review de novo. *Woo*, 161 Wn.2d at 52. We construe an insurance policy as a whole and give a fair, reasonable, and sensible construction as would be given by the average person purchasing insurance. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575, 964 P.2d 1173 (1998). Courts determine coverage under the plain meaning of the policy. *Capelouto v. Valley Forge Ins. Co.*, 98 Wn. App. 7, 13-14, 990 P.2d 414 (1999). We interpret the agreement to give effect to each provision. *Smith v. Cont'l Cas. Co.*, 128 Wn.2d 73, 78-79, 904 P.2d 749 (1995). Undefined terms are given their plain, ordinary, and popular meaning. *Kitsap County*, 136 Wn.2d at 576. Insurance

---

[6] We reject Bushnell's claim that Medico raises the argument for the first time on appeal that renewals under the policy constitute one continuous contract. The record shows that in response to Bushnell's argument on summary judgment that the three-day hospital stay requirement was eliminated when the policy was renewed after January 1988, Medico argued that the terms of the policy did not change, and the policy "was simply a continuation of the policy originally issued on October 9, 1986."

policies are liberally construed to provide coverage wherever possible. *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 694, 186 P.3d 1188 (2008).

¶21 If a policy is clear and unambiguous, the court must enforce it as written and not create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). An ambiguity exists only if the policy language is susceptible to two different reasonable interpretations. *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 784, 958 P.2d 990 (1998). If any ambiguity exists, the language of the policy must be construed in favor of the insured. *Bordeaux*, 145 Wn. App. at 694.

¶22 The meaning of a statute is also a question of law that we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985). If the statute is unambiguous, we give effect to that plain meaning as an expression of legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 9-10. " '[T]he court should assume that the legislature means exactly what it says. Plain words do not require construction.' " *City of Kent v. Jenkins*, 99 Wn. App. 287, 290, 992 P.2d 1045 (2000) (internal quotation marks omitted) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995)).

¶23 The legislature enacted the Act, chapter 48.84 RCW, in 1986.[7] The Act governs the content and sale of long-term care insurance and benefit contracts. RCW 48.84.010. RCW 48.84.010 states that the Act "shall be liberally construed to promote the public interest in protecting purchasers of long-term care insurance from unfair or deceptive sales, marketing, and advertising practices," and "[t]he provisions of this chapter shall apply in addition to other requirements of Title 48 RCW." RCW 48.18.130(2) provides that "[n]o

---

[7] Laws of 1986, ch. 170; *see also* Laws of 2008, ch. 145; chapter 48.83 RCW (reenacted and amended Long-Term Care Insurance Act for policies issued after January 1, 2009).

insurance contract shall contain any provision inconsistent with or contradictory to any such standard provision used or required to be used."

¶24 RCW 48.84.910 sets forth the effective date of the Act. RCW 48.84.910 provides, in pertinent part:

RCW 48.84.060 shall take effect on November 1, 1986, and the commissioner shall adopt all rules necessary to implement RCW 48.84.060 by its effective date including rules prohibiting particular unfair or deceptive acts and practices in the advertising, sale, and marketing of long-term care policies and contracts. The commissioner shall adopt all rules necessary to implement the remaining sections of this chapter by July 1, 1987, and the remaining sections of this chapter shall apply to policies and contracts issued on or after January 1, 1988.

¶25 As required by RCW 48.84.910, the insurance commissioner filed regulations implementing the Act in July 1987. WAC 284-54-015 defines the application and scope of the regulations. WAC 284-54-015 provides, in pertinent part:

(1) Except as otherwise specifically provided, this chapter shall apply to every policy, contract, or certificate, and riders pertaining thereto, of an insurer, fraternal benefit society, health care service contractor, or health maintenance organization, if such contract is primarily advertised, marketed, or designed to provide long-term care services over a prolonged period of time, which services may range from direct skilled medical care performed by trained medical professionals as prescribed by a physician or qualified case manager in consultation with the patient's attending physician to rehabilitative services and assistance with the basic necessary functions of daily living for people who have lost some or complete capacity to function on their own. Such contract is "long-term care insurance" or a "long-term care contract," and is subject to this chapter.

. . . .

(3) Long-term care contracts not meeting the requirements of this chapter, may not be issued or delivered in this state after December 31, 1987.

¶26 The regulations expressly prohibit prior hospitalization as a condition of coverage. WAC 284-54-150 provides, in pertinent part:

> No contract may be advertised, solicited, or issued for delivery in this state as a long-term care contract which does not meet the following standards. These are minimum standards and do not preclude the inclusion of other provisions or benefits which are not inconsistent with these standards.
>
> . . . .
>
> (7) No insurer may offer a contract form which requires prior hospitalization as a condition of covering institutional or community based care.

¶27 Medico asserts that the nursing care policy issued to Bushnell is not a long-term care policy under the Act. We disagree. The policy clearly falls within the broad definition of a "long-term care insurance policy." RCW 48.84.020(1) defines a "long-term care insurance policy" as

> any insurance policy or benefit contract primarily advertised, marketed, offered, or designed to provide coverage or services for either institutional or community-based convalescent, custodial, chronic, or terminally ill care.

¶28 The parties agree that the Act does not apply retroactively and that the three-day hospital stay requirement was valid when the policy was issued in January 1987. The question is whether renewal of the policy after the effective date of the regulations in January 1988 eliminated the three-day hospital stay requirement. Bushnell argues that when Evelyn renewed the insurance policy after the effective date of the regulations in January 1988, as a matter of law, there is a new agreement and the three-day hospital stay requirement no longer applied. Bushnell also points to the self-executing conformity clause in the policy to argue that the policy was amended and the hospital stay requirement eliminated. Part M(13) of the Medico policy provides:

> **Conformity With State Statutes:** The provisions of the policy must conform with the laws of the state in which you

reside on the Policy Date. If any do not, this clause amends them so that they do conform.

¶29 Medico argues the Act does not apply to renewals because the Act states that it applies only "to policies and contracts issued on or after January 1, 1988." Medico argues the language of the conformity clause means that the insurance policy cannot be amended after it is first issued.

¶30 The Washington Supreme Court in *Tebb* addressed the question of whether a renewal of an insurance policy creates a new contract that incorporates later enacted laws, or whether a renewal is only a continuation of the original terms of the policy. *Tebb v. Cont'l Cas. Co.*, 71 Wn.2d 710, 712, 430 P.2d 597 (1967).

¶31 In *Tebb*, beginning in 1942, Tebb paid quarterly renewal premiums for an accident and health insurance policy. The policy did not have a provision for a grace period. *Tebb*, 71 Wn.2d at 711. The policy stated that it " 'may be renewed with the consent of the Company.' " *Tebb*, 71 Wn.2d at 713.

¶32 In 1951, the legislature passed a law requiring insurance policies to provide a 31-day grace period. *Tebb*, 71 Wn.2d at 712 (quoting former RCW 48.20.062 (1951)).[8] Tebb did not pay the premium due on September 1, 1964. On September 7, Tebb died in an accident. *Tebb*, 71 Wn.2d at 710-11. The insurance company denied benefits because the policy lapsed for nonpayment. *Tebb*, 71 Wn.2d at 711. The trial court granted summary judgment in favor of Tebb. *Tebb*, 71 Wn.2d at 711.

¶33 On appeal, the Washington State Supreme Court affirmed. *Tebb*, 71 Wn.2d at 715. Quoting 13 John Alan Appleman, *Insurance Law and Practice*, section 7648, at 419 (1943), the court held that unless a contrary intention is clearly shown, each time a policy is renewed, a new contract is formed:

---

[8] A shorter grace period applies for premiums paid monthly or weekly. RCW 48.20.062.

> "A renewal contract has been stated by many jurisdictions to be a new, and a separate and distinct contract, unless the intention of the parties is shown clearly that the original and renewal agreements shall constitute one continuous contract."

*Tebb*, 71 Wn.2d at 713. The court states that the conclusion it reached was consistent with a previous decision, *Perkins v. Associated Indem. Corp.*, 189 Wn. 8, 63 P.2d 499 (1936), holding that a renewal accident policy issued from term to term is not a continuous policy. *Tebb*, 71 Wn.2d at 713-14.

¶34 The *Tebb* court decided that the right of the insurer to accept or reject the renewal was conclusive evidence that the parties intended to create a new contract "upon the acceptance of the renewal premium." *Tebb*, 71 Wn.2d at 714. Accordingly, the court held that because "upon each renewal a new contract is formed, hence, the statutory grace period was incorporated into the contract upon the acceptance of the renewal premiums." *Tebb*, 71 Wn.2d at 714.

¶35 The holding in *Tebb* is also consistent with 2 Steven Plitt et al., *Couch on Insurance*, section 29:33 (3d ed. rev. 2010). In section 29:33, *Couch* states, in pertinent part:

> Whether the renewal of a policy constitutes a new and independent contract or continuation of the original contract primarily depends upon the intention of the parties as ascertained from the instrument itself.
>
> In the absence of any contrary statutory provision, the parties may effectively designate that the renewal policy shall be regarded as a continuation of the policy or that it shall not be so regarded. Accordingly, it has been held that the rule that a renewal policy constitutes a separate and distinct contract for the period of time covered by the renewal does not apply where the extension agreement shows a contrary intention as by stipulating that the original agreement "continues in force." Likewise, where a policy clearly stated that it terminated at the end of the policy period, a new contract with a new effective date was created each time the policy was renewed.

(Footnotes omitted.)

¶36 Here, the language of the policy does not indicate any intent that the original terms of the policy constitute one continuous contract or shall continue in force. To the contrary, the policy clearly states that each time the policy is renewed, "the new term begins when the old term ends." The policy states, in pertinent part:

> Your coverage starts on the Policy Date at 12 o'clock noon standard time where you live. It ends at 12 o'clock noon on the same standard time on the first renewal date. Each time you renew your policy, the new term begins when the old term ends.

Although under the renewal provision Medico cannot refuse to renew the policy, Medico expressly reserves the right to not renew.

> As long as you pay the renewal premium then in effect on the date it is due or during the 31-day grace period, we cannot refuse to renew your policy unless we do the same to all policies of this form issued to persons of your class (for example, age) in your state. Your policy stays in force during your grace period. No refusal of renewal will affect a claim existing in a confinement period.

> We can change your premium only if we do the same to all policies of this form issued to persons of your class (for example, age) in your state and we will notify you in advance of the due date.

¶37 We conclude that under the terms of the long-term skilled nursing care policy issued by Medico to Bushnell, upon acceptance of each renewal premium, a new contract was formed. Accordingly, after the effective date of the regulations implementing the Act, the three-day hospital stay requirement no longer applied. Further, under the conformity clause of the policy, upon acceptance of Bushnell's renewal payment after implementation of the regulations in January 1988, the policy was amended to conform with state law.

¶38 In the alternative, Medico argues that regardless of whether the three-day hospital stay requirement applies, Bushnell is not entitled to coverage because the

policy lapsed for nonpayment. There is no dispute that the final renewal premium covered the 60-day period from January 1, 2007 until February 28, 2007. There is also no dispute that the claim arose on February 24 when Evelyn was admitted to a nursing care facility, and that Bushnell submitted a claim to Medico for benefits under the policy on February 24.

¶39 Nonetheless, Medico argues that under the terms of the policy, Bushnell was only entitled to benefits after the required 20-day "elimination period," and because the benefits lapsed on March 1, Medico asserts it properly denied benefits.

¶40 The unambiguous terms of the policy do not support Medico's argument. The policy defines the "elimination period" as

> the number of days for which benefits are eliminated in consideration for a reduced premium. The elimination period, if any, starts on the date that benefits would otherwise begin and it is in effect for the number of days shown on the Schedule.

The Schedule provides for a 20-day elimination period for skilled nursing care. Medico argues that after taking into account the 20-day elimination period, Bushnell was not entitled to benefits. However, Medico's argument ignores the 31-day grace period provided for in the policy. The policy unambiguously states that during the grace period, "[y]our policy stays in force."

> **Grace Period:** Your premium must be paid on or before the date it is due or during the 31-day grace period that follows. Your policy stays in force during your grace period. You always have your grace period unless your policy will not be renewed. We will send you notice of nonrenewal at least 30 days before your premium is due.

Accordingly, even if the 20-day elimination period is taken into account, coverage did not lapse until after the grace period.

¶41 We reverse dismissal of Bushnell's claim for coverage under the policy but remand on the question of

whether Medico acted in bad faith. (Whether an insurer acts in bad faith is a question of fact. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 395, 823 P.2d 499 (1992)).

¶42 Bushnell requests attorney fees on appeal under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Upon compliance with RAP 18.1, Bushnell is entitled to attorney fees under *Olympic Steamship*.

¶43 We reverse and remand.

GROSSE and ELLINGTON, JJ., concur.

Reconsideration denied March 17, 2011.

Review denied at 172 Wn.2d 1005 (2011).