[No. 65946-4-I.   Division One.   December 12, 2011.]

WEST COAST PIZZA COMPANY, INC., *Appellant*, v. UNITED
NATIONAL INSURANCE COMPANY, *Defendant*, NATIONAL
CONTINENTAL INSURANCE COMPANY, *Respondent*.

34

*James H. Clark Jr.* (of *Oseran Hahn Spring Straight & Watts PS*), for appellant.

*Jeffory E. Adams* (of *Murray Dunham & Murphy*), for respondent.

¶1 DWYER, C.J. — West Coast Pizza Company Inc. appeals from the trial court's summary judgment ruling that the insurance policy issued by National Continental Insurance Company—which names West Coast Pizza as the only

insured—does not provide liability coverage for Mad Pizza Company Inc. Because Mad Pizza was not an insured pursuant to the policy, and because West Coast Pizza has demonstrated no mutual mistake justifying reformation of the policy, we affirm.

I

¶2 West Coast Pizza and Mad Pizza are separate Washington entities that operate Domino's Pizza franchises in our state. West Coast Pizza is owned by Bryan Dobb, Kevin Dobb, and Dean Brandt. Bryan Dobb is the sole owner of Mad Pizza. During the period of time relevant here, West Coast Pizza operated 2 Domino's franchises and Mad Pizza operated 11 such franchises. The Dobb brothers additionally operated Domino's franchises owned by three other Washington entities. Collectively, these five entities operated 21 Domino's franchises and employed approximately 100 pizza delivery drivers.

¶3 In August 2006, the Dobbs employed the services of an insurance agent to obtain liability insurance coverage related to pizza delivery. The application submitted by the insurance agent listed West Coast Pizza, "dba Domino's Pizza," as the sole applicant. Although the application did not mention the other entities operating Domino's franchises, it did indicate the total number of delivery drivers to be 100.

¶4 Based upon that application, National Continental issued an insurance policy to West Coast Pizza for the period from September 1, 2006 to September 1, 2007. The insurance agent thereafter faxed to National Continental a schedule of locations, identifying the 21 franchise locations. The schedule of locations was entitled "Location Schedule – West Coast Pizza." The schedule did not identify the other corporate entities, even though those corporations operated a majority of the listed locations.

¶5 On May 29, 2007, Mad Pizza delivery driver Solomon Quito was involved in an automobile collision resulting in

injuries to Joy Tschernega. Tschernega thereafter filed a negligence lawsuit in Snohomish County Superior Court against Quito and Mad Pizza, alleging that Quito was acting as an agent of Mad Pizza at the time of the collision. West Coast Pizza is not named as a defendant in Tschernega's complaint.

¶6 National Continental refused to provide a defense against the Tschernega lawsuit, contending that because West Coast Pizza had failed to complete requested audit information, the policy had been cancelled prior to the automobile collision. West Coast Pizza thereafter filed a complaint for declaratory judgment, seeking a declaration that the National Continental policy was in effect on the date that the collision occurred. National Continental moved for summary judgment, contending that it had the right to cancel the policy because West Coast Pizza had failed to complete and return audit questionnaires and that in any event, the policy did not insure the vehicle involved in the collision. The trial court denied National Continental's motion for summary judgment.

¶7 National Continental thereafter filed an additional motion for summary judgment, this time asserting that it had no duty to defend or indemnify Mad Pizza or Quito in the Tschernega lawsuit because neither Mad Pizza nor Quito was insured by the policy and because Quito's vehicle was not a "covered auto" pursuant to that policy. On this basis, the trial court granted National Continental's motion for summary judgment.

¶8 West Coast Pizza appeals.[1]

## II

¶9 West Coast Pizza first contends that the National Continental insurance policy obligates National Continen-

---

[1] In addition, National Continental cross appeals, contending that the trial court erred by denying its motion for summary judgment based upon cancellation of the insurance policy. We need not address the propriety of that ruling in order to resolve this case.

tal to defend and indemnify Mad Pizza against the Tschernega lawsuit.[2] We disagree.

¶10 "In reviewing a summary judgment order, the appellate court evaluates the matter de novo, performing the same inquiry as the trial court." *Snohomish County v. Rugg*, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

■■ ¶11 Similarly, interpretation of an insurance contract is a question of law that is reviewed de novo by this court. *Bushnell v. Medico Ins. Co.*, 159 Wn. App. 874, 881, 246 P.3d 856, *review denied*, 172 Wn.2d 1005 (2011). "If a

---

[2] Neither party addresses whether West Coast Pizza's claim is justiciable, as required in order to obtain a declaratory judgment pursuant to the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW. Moreover, justiciability was not the basis for the trial court's ruling. Although we affirm on the basis of the trial court's ruling, we note that this claim is not justiciable—a judicial determination of the dispute does not affect the rights of West Coast Pizza, and Mad Pizza, the rights of which are affected by resolution of this dispute, is not a party to this case.

The UDJA provides that "[a] person interested under a . . . written contract . . . whose rights, status or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020. A justiciable controversy must exist in order to invoke a court's jurisdiction pursuant to the UDJA. *Pasado's Safe Haven v. State*, 162 Wn. App. 746, 759, 259 P.3d 280 (2011). To be justiciable, a claim must involve

"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Pasado's*, 162 Wn. App. at 761 (alteration in original) (internal quotation marks omitted) (quoting *DiNino v. State*, 102 Wn.2d 327, 330-31, 684 P.2d 1297 (1984)).

Here, West Coast Pizza is not a party to the underlying Tschernega lawsuit; Mad Pizza and Quito are the only named defendants. Thus, as West Coast Pizza and Mad Pizza are separate corporate entities, West Coast Pizza will not incur liability for the automobile collision notwithstanding the outcome of that litigation. For this reason, West Coast Pizza does not have a "direct and substantial" interest in whether the National Continental insurance policy provides coverage for the Tschernega claim. Thus, the claim is not justiciable. The trial court would have acted properly had it dismissed this lawsuit on that basis.

policy is clear and unambiguous, the court must enforce it as written." *Bushnell*, 159 Wn. App. at 882. In such circumstances, the court may not modify the contract or "create ambiguity where none exists." *Bushnell*, 159 Wn. App. at 882. Ambiguity exists only where the policy language is susceptible to different interpretations, each of which is reasonable. *Bushnell*, 159 Wn. App. at 882. Where the policy language is ambiguous, "the language of the policy must be construed in favor of the insured." *Bushnell*, 159 Wn. App. at 882.

¶12 Insurance policies are contracts, and, thus, the principles of contract interpretation apply. *See, e.g., Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). " 'The cardinal rule with which all interpretation begins is that its purpose is to ascertain the intention of the parties.' " *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990) (quoting Arthur L. Corbin, *The Interpretation of Words and the Parol Evidence Rule*, 50 CORNELL L. QUAR. 161, 162 (1965)). In Washington, "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." *Berg*, 115 Wn.2d at 667. However, such extrinsic evidence is admitted only " 'for the purpose of aiding in the interpretation of what is in the instrument, and not for the purpose of showing intention independent of the instrument.' " *Berg*, 115 Wn.2d at 669 (quoting *J.W. Seavey Hop Corp. v. Pollock*, 20 Wn.2d 337, 348-49, 147 P.2d 310 (1944)).

¶13 Here, the policy's liability coverage provision provided that National Continental "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " Clerk's Papers (CP) at 424. The policy further stated that National Continental had "the right and duty to defend any 'insured' against a 'suit' asking for such damages." CP at 424. An "insured"

included "[y]ou for any covered 'auto'," where "you" referred to the named insured—here, solely West Coast Pizza, "dba Domino's Pizza." CP at 424, 409. The policy further provided that the covered autos were "those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business" and included " 'autos' owned by your 'employees.' " CP at 423; *see also* CP at 409. Again, "your" was defined within the policy as the named insured. CP at 423.

¶14 The National Continental policy language clearly indicates that West Coast Pizza was the only named insured; Mad Pizza was named nowhere within the policy. Accordingly, pursuant to the unambiguous policy language, National Continental was obligated to pay only those sums legally owed by West Coast Pizza. Similarly, the policy clearly indicated that National Continental's duty to defend and indemnify was owed solely to the named insured— here, West Coast Pizza. Moreover, the only "autos" covered by the policy were those used in connection with West Coast Pizza's business and owned by West Coast Pizza's employees. Thus, both the liability coverage provision and the description of automobiles covered by the policy unambiguously indicate that the National Continental policy did not provide coverage to Mad Pizza with regard to the Tschernega lawsuit. Neither Mad Pizza nor Quito was a named insured within the policy, and the automobile driven by Quito when the collision occurred was not a "covered auto."

¶15 Nevertheless, West Coast Pizza contends that extrinsic evidence demonstrates that the parties intended the National Continental insurance policy to provide coverage for the Domino's franchise location—operated by Mad Pizza—where Quito was employed.[3] Specifically, West Coast Pizza points to the insurance application, the sched-

---

[3] The schedule of locations was not a part of the National Continental insurance policy. Moreover, the policy provided coverage for damages resulting from automobile collisions involving "covered autos" when such damages were legally owed by the named insured on the policy—*not* for particular franchise locations.

ule of locations provided to National Continental, the number of delivery drivers indicated within the insurance policy, and the premium paid for the policy. Although we may consider such extrinsic evidence, we may do so only in order to resolve the determinative issue—the intention of the parties. *Berg*, 115 Wn.2d at 667-69. Here, none of the evidence cited by West Coast Pizza indicates that National Continental intended to insure Mad Pizza and its delivery drivers.

¶16 First, the insurance application, although stating the number of delivery drivers to be 100, listed West Coast Pizza as the only applicant. Mad Pizza was named nowhere within the application. Moreover, the schedule of locations provided to National Continental indicated that all 21 locations were operated by West Coast Pizza, as the list was entitled "Location Schedule - West Coast Pizza." CP at 279. Although the insurance policy indicated the number of delivery drivers to be 100, the policy language unambiguously provided that the only "covered autos" were those driven by employees of West Coast Pizza. Finally, even if the premium paid was determined based upon the number of locations and drivers, there is no evidence that the premium would be the same had the policy included as named insureds all five of the business entities that operated those locations and employed those drivers.

¶17 The "plain, explicit language [of an insurance policy] cannot be disregarded, nor an interpretation given the policy at variance with the clearly disclosed intent of the parties." *Davis v. N. Am. Accident Ins. Co.*, 42 Wn.2d 291, 297, 254 P.2d 722 (1953). At best, the evidence cited by West Coast Pizza demonstrates that National Continental intended to provide coverage for West Coast Pizza that included 100 delivery drivers at 21 locations—*not* that National Continental intended to insure Mad Pizza, which was named neither in the insurance application nor in the insurance policy. Because the unambiguous language of the National Continental insurance policy indicates that Na-

tional Continental had no duty to defend or indemnify Mad Pizza against the Tschernega lawsuit, the trial court properly granted National Continental's motion for summary judgment.

## III

¶18 West Coast Pizza further contends that reformation is an appropriate remedy because both National Continental and West Coast Pizza intended that the insurance contract provide coverage for automobiles driven by Mad Pizza employees. We disagree.

¶19 Mutual mistake will support reformation of a contract where the contracting parties had identical intentions but the writing materially varies from that intent. *Denny's Rests., Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 212, 859 P.2d 619 (1993). Contracts are not reformed for mistake; writings are. *A&A Sign Co. v. Maughan*, 419 F.2d 1152, 1156 (9th Cir. 1969). "The mistake must be proved by clear, cogent and convincing evidence, and if doubts exist as to the parties' intent, reformation is not appropriate." *Denny's Rests.*, 71 Wn. App. at 212. "Reformation is not a proper remedy for the enforcement of terms to which the defendant never assented." 7 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 28.45, at 302 (rev. ed. 2002). Moreover, "[t]he unexpressed intention of one party is meaningless as to the mutual intention of the parties." *Am. States Ins. Co. v. Breesnee*, 49 Wn. App. 642, 646, 745 P.2d 518 (1987).

¶20 As explained above, the record does not reflect that National Continental intended to insure Mad Pizza and its delivery drivers. Rather, the uncontroverted evidence—including that West Coast Pizza was the only entity named on the insurance application and that West Coast Pizza was the only named insured pursuant to the National Continental policy—establishes that National Continental intended to provide liability coverage for West Coast Pizza alone. At most, the evidence establishes unilateral mistake on the

part of the Dobb brothers and Brandt—they desired to procure insurance for various corporations but did not take the necessary steps to do so. Unilateral mistake cannot be the basis for reformation. *Keierleber v. Botting*, 77 Wn.2d 711, 715, 466 P.2d 141 (1970); *Oliver v. Flow Int'l Corp.*, 137 Wn. App. 655, 664, 155 P.3d 140 (2006) (noting that reformation for unilateral mistake is proper only where the nonmistaken party engaged in inequitable conduct).

¶21 Because West Coast Pizza has not shown that the writing at issue—the insurance policy—is at variance with the mutual intent of the contracting parties, reformation is not an appropriate remedy.[4]

¶22 Affirmed.

SCHINDLER and SPEARMAN, JJ., concur.

---

[4] Because West Coast Pizza is not a prevailing party, its request for an award of attorney fees on appeal is denied.