**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

NOVEMBER 6, 2025

*[signature]*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
NOVEMBER 6, 2025

*[signature]*

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LISA M. AZORIT-WORTHAM, | ) | |
| | ) | No. 103488-1 |
| Petitioner, | ) | |
| | ) | En Banc |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | Filed: <u>November 6, 2025</u> |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON and ALASKA AIRLINES, | ) | |
| INC., | ) | |
| Respondents. | ) | |
| | ) | |

MUNGIA, J.— Lisa Azorit-Wortham was a flight attendant for Alaska Airlines. Ms. Azorit-Wortham claimed she contracted COVID-19 in March 2020 because of her employment. She claimed that her illness met the definition of "occupational disease" under Washington's Industrial Insurance Act (IIA or Act) because she likely contracted COVID-19 either while working or while traveling because of work. The Act, Title 51 RCW, provides coverage to workers who get injured on the job or who develop an occupational disease arising out of their employment.

The case went before a jury. The trial court ruled that the traveling employee doctrine, which applies when a worker is injured while traveling for work, also applies when an employee contracts an occupational disease while traveling for work. Over Alaska Airlines's objection, the trial court instructed the jury that coverage under the Act included the time Ms. Azorit-Wortham spent traveling for work. The jury found in favor of Ms. Azorit-Wortham.

On appeal, the Court of Appeals held that the trial court erred in giving the traveling employee instruction, held that the error was prejudicial, and reversed and remanded the case to the trial court. It did not address Alaska Airlines's argument that substantial evidence did not support the jury's verdict.[1]

We hold that the traveling employee doctrine applies when an employee contracts an occupational disease while traveling for work. We further hold that the trial court here correctly instructed the jury as to the traveling employee doctrine. We reverse and remand to the Court of Appeals for further proceedings consistent with this opinion.

---

[1] Because the Court of Appeals did not address this issue, and the parties did not brief or argue the issue to this court, we decline to consider it here.

I
LISA AZORIT-WORTHAM WAS A FLIGHT ATTENDANT

Lisa Azorit-Wortham worked for Alaska Airlines as a flight attendant in March 2020. On March 30, 2020, Ms. Azorit-Wortham took a COVID-19 test. On April 1, 2020, she learned that the test result was positive.

The parties agree that Ms. Azorit-Wortham's window for being exposed to COVID-19 was between March 16 and March 27, 2020. During that time frame, Ms. Azorit-Wortham flew on eight flights, four of which were transcontinental. At that time, passengers and crew were not wearing masks to prevent the transmission of COVID-19.

Ms. Azorit-Wortham testified that when she was not working, she avoided contact with people other than her husband and son. She estimated she had come into close contact with fewer than 10 people during the time she was not working.

II
MS. AZORIT-WORTHAM FILED A CLAIM FOR CONTRACTING AN OCCUPATIONAL
DISEASE

Ms. Azorit-Wortham filed a workers' compensation claim, seeking compensation for contracting COVID-19 while working. The Department of Labor and Industries (Department) granted her claim. Alaska Airlines appealed to the Board of Industrial Insurance Appeals (BIIA). An administrative law judge heard the appeal, concluded that Ms. Azorit-Wortham's COVID-19 illness did not qualify as an occupational disease, and reversed the Department. Ms. Azorit-Wortham filed a

petition for review with the BIIA.  The BIIA upheld the administrative law judge's ruling.

## III
### Ms. Azorit-Wortham Appealed to the Pierce County Superior Court

Ms. Azorit-Wortham appealed the BIIA's ruling to the superior court.  A jury decided the appeal.  In the appeal, the sole issue for the jury to decide was whether the BIIA was correct in denying Ms. Azorit-Wortham's claim that her COVID-19 illness should be covered as an occupational disease.

The only evidence that the jury could consider was the evidence presented to the BIIA, which consisted solely of the transcripts of the testimony.  Before the parties gave their closing arguments, the trial judge instructed the jury on the law.

The trial court gave two instructions to the jury that are the focus of this appeal.

The first instruction provided the jury with a definition of "occupational disease."  The jury was required to follow instruction 14 in determining whether Ms. Azorit-Wortham's COVID-19 illness met the requirements to be considered an "occupational disease."  Instruction 14 provided:

> An occupational disease is a disease or infection that arises naturally and proximately out of the worker's employment.
>
> A disease arises naturally out of employment if the disease comes about as a matter of course as a natural consequence of distinctive conditions of the worker's employment.  It is not necessary that the conditions be peculiar to, or unique to, the particular employment.  A disease does not arise naturally out of employment if it is caused by conditions of everyday life or of all employments in general.

A disease arises proximately out of employment if the conditions of the workers' employment proximately caused or aggravated the worker's disease.

Clerk's Papers (CP) at 517.

All parties agree that instruction 14 was an appropriate instruction.

The trial court also instructed the jury that the Act provided coverage for Ms. Azorit-Wortham during the time she was traveling for work. In instruction 9, the trial court instructed the jury on the traveling employee doctrine.

A traveling employee is subject to workers' compensation coverage throughout the duration of the business trip, including during travel, hotel stays and meals at restaurants. Any occupational disease occurring during such business travel is covered by the Washington State Industrial Insurance Act.

CP at 512.

Alaska Airlines objected to the court giving instruction 9. Alaska Airlines argued that instruction 9 conflicted with instruction 14, and the Department defended the instruction.

[Counsel for Alaska]: The case law addressing traveling employees is limited to industrial injury cases. We have an occupational disease case. There has never been any case that has said that this applies to occupational disease cases, and I believe that it, therefore, could be considered as trumping the actual occupational disease statute. The traveling employee doctrine, for example, if the individual fell while they were in the hotel room, sustained an injury, clearly applicable and would get them coverage. But with this being expanded to an occupational disease statute, then when you look at our actual occupational disease instruction . . .

[The Court]: It's No. 14 on the list.

[Counsel for Alaska]: Which is 14, it states a disease does not arise naturally out of employment if it is caused by conditions of everyday life and/or all employments in general. We all travel to hotels, we all travel in airports, on airplanes; so therefore - - as part of our everyday life. Any traveling - - any person that has gone on a business trip is exposed to those things, but that doesn't make it a distinctive condition of employment. And therefore, we believe that 9 and 14 are inconsistent with one another. And so we don't believe that the traveling employee doctrine applies to occupational diseases. And as for No. 9, we had proposed, or at least it was essentially a joint proposal this morning that counsel and I had put together last night, that added the additional line that said the worker would be subject to workers' compensation coverage for such activities provided the definition of occupational disease which is elsewhere given in these instructions is met. Off the record, we had talked about this, and I understand that counsel for plaintiff didn't have any preference as to which of these two was given, and in light of plaintiff not having a preference, the Court opted to give the Court's proposed 9. Thank you, Your Honor.

[The Court]: I'm trying to find that proposal, but it just seemed to me it was awkwardly worded and amounted to the same thing. I thought it was a distinction without a difference. [Counsel], do you have any comment about this?

[Counsel for Ms. Azorit-Wortham]: No, Judge.

[The Court]: Well, if - -

[Counsel for the Department]: Can I make a comment, Your Honor?

[The Court]: Yes, go right ahead.

[Counsel for the Department]: So the juxtaposition between Instruction 9 and 14, I do not believe these are inconsistent with each other. It's the Department's position that everyday life is not implicated by what the worker was doing here. I don't travel on planes every day of my life or stay in hotels every day of my life, but for work, this person has a distinct condition of doing that regularly. And for that, I believe 9 and 14 are consistent, and the Department does not have an objection.

6

[The Court]: Well, here's the deal. When we discussed this informally and off the record, I opined that I thought, well, an occupational disease for a traveling employee would be - - it's a hard to imagine kind of event, but that doesn't mean it couldn't happen. And if an occupational disease can occur - - one of the reasons is because we ordinarily don't think of an occupational disease as necessarily occurring as a one-off like an injury is, you know, where there's a - - you can usually point to a specific incident where if someone got injured that was associated with their travel.

So there was no, it seemed to me, policy reason not to include an occupational disease, and there was nothing in the language of the statute that says that an occupational disease couldn't qualify in the circumstances of a traveling employee. And so I - - I didn't see any reason to exclude it as a matter of law. As a matter of fact, I'm going to think - - as I say, I think it's kind of rare. But the idea that it could happen? Sure. It could happen, and maybe that's what happened here. So as I say, I also don't think that the proposed instruction you guys gave me today really was different except that it was cut - - it was worded in such a way that was so awkward that I thought, well, let's get to the point and say what we mean. And I think this says the same thing, so I'll adhere to the Court's Instruction No. 9.

3 Verbatim Rep. of Proc. (VRP) at 108-11.

Alaska Airlines preserved its objection to the trial court giving instruction 9.

IV
ALASKA AIRLINES ARGUED TO THE JURY THAT MS. AZORIT-WORTHAM'S COVID-19 ILLNESS DID NOT MEET THE DEFINITION OF AN "OCCUPATIONAL DISEASE"

During its opening statement, Alaska Airlines foreshadowed the definition of "occupational disease" by arguing to the jury that Ms. Azorit-Wortham would not be able to show she developed COVID-19 "naturally and proximately from the distinctive conditions of employment." 2 VRP at 95. Alaska Airlines repeated that phrase during closing arguments. 3 VRP at 142.

7

During Alaska Airlines's closing argument, it argued using both instructions 14

and 9.  Alaska Airlines argued to the jury that while instruction 9 provides coverage

under the Act while the employee is traveling, the jury still has to find that COVID-19

met the definition of an occupational disease under instruction 14.

> [Counsel for Alaska]:  Now, what is an occupational disease?
> Jury Instruction No. 14 was brought to your attention, and the assistant
> attorney general cited the statement that talked about caused by
> conditions of everyday life or all employments in general. . . .  But what
> this states is that a disease does not arise naturally out of employment if
> it is caused by conditions of everyday life or all employments in
> general. . . .
>
> So the original contention was, well, it was caused by work.  And
> counsel had his chart of probabilities where he's putting particular
> stickies up on the Board.  He stated, therefore it had to be caused by
> work.  Well, again, if you look at Instruction No. 14, it doesn't say that
> is the only requirement.  If that was the only requirement, Instruction
> No. 14 would simply say, an occupational disease is allowed if it comes
> from work.  It's got a bunch of other stuff here.
>
> . . . .
>
> Now, when you talk about the last sentence which is proximately
> caused - - must be proximately caused, that's where you jump to
> No. 15.  That says, the term proximate cause means the cause in which
> a direct sequence produces the condition complained of and without
> which such condition would not have happened.  This is where we say
> that if you could get COVID-19 and not be working as a flight
> attendant, this is not an allowable occupational disease. . . .
>
> . . . .
>
> Now I'd like to compare and contrast the experts or medical
> witnesses.  Before I do that, I wanted to address Instruction No. 9.  This
> is the one that begins traveling employee in terms of coverage.  What
> this is designed to address is if you were on a work trip and you just

happen to be in the hotel and you fall down and hurt yourself, you're still covered. That injury is still covered. This, however, does not trump Instruction No. 14, which is the occupational disease requirement. There still has to be a showing that this condition arose naturally and proximately from the distinctive conditions of employment.

3 VRP at 138-42.

V

A TRIAL COURT'S DECISION TO GIVE, OR NOT GIVE, A PROPOSED JURY INSTRUCTION IS REVIEWED FOR ABUSE OF DISCRETION. HOWEVER, WE REVIEW DE NOVO IF AN INSTRUCTION INCORRECTLY STATES THE LAW

It is within a trial court's discretion whether to give a proposed jury instruction. *Fergen v. Sestero*, 182 Wn.2d 794, 802, 346 P.3d 708 (2015). Accordingly, we will only reverse a trial court's decision to give a proposed instruction if the trial court has abused its discretion. *Id*.

If a party alleges the trial court gave an instruction that incorrectly states the law, then we review that instruction de novo. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 860, 281 P.3d 289 (2012). An erroneous instruction is reversible error only if it prejudices a party. *Id*. If the instruction contains a clear misstatement of the law, prejudice is presumed. *Id*. If the instruction is merely misleading, then the party challenging the instruction must demonstrate prejudice. *Id*.

VI

THE TRAVELING EMPLOYEE DOCTRINE APPLIES TO OCCUPATIONAL DISEASES

RCW 51.32.010 (governing industrial injuries) and .180 (governing occupational diseases) provide that an employee "injured in the course of [their]

employment" or "who suffers disability from an occupational disease in the course of employment" is entitled to workers' compensation. An "occupational disease" is a "disease or infection as arises naturally and proximately out of employment." RCW 51.08.140.

The issue presented in this appeal is whether the traveling employee instruction given by the trial court alters the statutory definition of "occupational disease." Alaska Airlines and the Court of Appeals each addressed this question differently. We accordingly address both of their analyses.

A. *Alaska Airlines Argued That the Traveling Employee Instruction Changed the Definition of "Occupational Disease" Found in Instruction 14*

Alaska Airlines agrees that "[i]f the worker can show that they sustained an occupational disease that arose naturally and proximately out of distinctive conditions of employment while traveling, they are covered for an occupational disease." Alaska Airlines Answer to Petr's Pet. for Rev. at 25. However, Alaska Airlines argues that "[t]he Traveling Employee Doctrine changes the well-established definition of occupational disease and makes coverage automatic without requiring the worker to establish the elements of the definition." *Id*. at 27.

We disagree.

Here, the trial court instructed the jury on the definition of an occupational disease in instruction 14.

> An occupational disease is a disease or infection that arises naturally and proximately out of the worker's employment.
>
> A disease arises naturally out of employment if the disease comes about as a matter of course as a natural consequence of distinctive conditions of the worker's employment. It is not necessary that the conditions be peculiar to, or unique to, the particular employment. A disease does not arise naturally out of employment if it is caused by conditions of everyday life or of all employments in general.
>
> A disease arises proximately out of employment if the conditions of the workers' employment proximately caused or aggravated the worker's disease.

CP at 517.

Alaska Airlines, using the trial court's instructions, was able to argue to the jury that even if the traveling employee instruction applies, the jury still had to find that Ms. Azorit-Wortham's COVID-19 illness met the definition of occupational disease as required in instruction 14:

> That injury is still covered. This, however, does not trump Instruction No. 14, which is the occupational disease requirement. There still has to be a showing that this condition arose naturally and proximately from the distinctive conditions of employment.

3 VRP at 142.

Alaska Airlines argues, "Application of the Traveling Employee Doctrine to the definition of occupational disease means a disease contracted while traveling is automatically compensable and there is no analysis about whether it was caused by conditions of everyday life or all employments in general." Alaska Airlines Answer to Petr's Pet. for Rev. at 24. However, instruction 9, the traveling employee

instruction, does not change the definitional terms found in instruction 14. Instead, it simply recognizes that if a worker contracts a disease that meets the definitional requirements in instruction 14 while traveling for work, then the Act provides coverage. Instruction 9 does not state that any disease that a worker contracts while on a business trip is compensable; instead, only "occupational diseases" are covered. Instruction 14 required the jury to find that Ms. Azorit-Wortham's COVID-19 illness met the definition of "occupational disease."

In short, instruction 9 simply provides the temporal term for IIA coverage—i.e., during the time the employee is traveling for work they will be covered—while instruction 14 sets forth the definitional terms that need to be met to obtain coverage.

B. *The Court of Appeals Held That the Traveling Employee Doctrine Does Not Apply to Occupational Diseases*

The Court of Appeals analyzed this issue differently than Alaska Airlines. Although Alaska Airlines acknowledged that the traveling employee doctrine could apply to occupational diseases, the Court of Appeals held that the traveling employee doctrine can never apply to occupational diseases.

As an initial matter, it is critical that courts resolve any doubt as to the Act's meaning in favor of the injured worker when analyzing an issue involving the IIA. *Clauson v. Dep't of Lab. & Indus.*, 130 Wn.2d 580, 584, 925 P.2d 624 (1996). This same standard is imposed in construing insurance agreements in general: "Insurance policies are liberally construed to provide coverage wherever possible."

*Medico Ins. Co.*, 159 Wn. App. 874, 881-82, 246 P.3d 856 (2011).  Instead of following that precept of construing the language of the Act to find coverage, the Court of Appeals construed the language to deny coverage.  Indeed, when construing the statutory language, the Court of Appeals majority did not even acknowledge this precept.

The Court of Appeals began its analysis by discussing *Ball-Foster Glass Container Co. v. Giovanelli*, in which this court first held that the traveling employee doctrine applies to industrial injuries.  163 Wn.2d 133, 177 P.3d 692 (2008).  In *Giovanelli*, the employee, Alfred Giovanelli, traveled from his home in Pennsylvania to work at a jobsite in Seattle.  *Id.* at 137-38.  On a Sunday, his day off, Mr. Giovanelli was walking to a park and was injured when hit by a car.  *Id.* at 139.  Mr. Giovanelli applied for workers' compensation benefits.  *Id.*  The Department ordered the employer to allow the claim.  *Id.*  After administrative appeals, the employer appealed the decision to the trial court.  *Id.*  The trial court granted the Department's motion for summary judgment affirming the award because it found that Mr. Giovanelli was in the course of his employment when he was injured.  *Id.* The Court of Appeals affirmed.  *Id.* at 140.  Our court affirmed as well.  *Id.* at 153-54.

The Court of Appeals in this case relied on a footnote in *Giovanelli*, which noted that industrial injuries need only occur within "the course of employment" while occupational disease cases have an additional requirement: they must also

"'aris[e] out of'" employment. *Id.* at 141 n.2. The Court of Appeals here cited this language to support its conclusion that the traveling employee doctrine applies only to industrial injury, not occupational disease. *Azorit-Wortham v. Dep't of Lab. & Indus.*, 32 Wn. App. 2d 84, 95, 554 P.3d 1235 (2024).

The Court of Appeals' rationale was the following:

> This distinction highlights the critical difference between what a claimant must show for an industrial injury versus an occupational disease. While the traveling employee doctrine extends coverage for a worker *injured* during such activities as "eating, sleeping, and ministering to personal needs away from home," such an expansion is allowable because industrial injuries need not "arise out of employment," as is required for occupational diseases. [*Giovanelli*, 163 Wn.2d] at 142; *Dennis* [*v. Dep't of Lab. & Indus.*], 109 Wn.2d [467,] 480-81[, 745 P.2d 1295 (1987)]. Eating, sleeping, and ministering to personal needs away from home, rather than being distinctive conditions of one's employment, are instead conditions of everyday life. Conditions of everyday life are specifically excluded as conditions from which an occupational disease can "arise out of." *See Street* [*v. Weyerhaeuser Co.*], 189 Wn.2d [187,] 199[, 399 P.3d 1156 (2017)] ("'Arises naturally' means that the conditions of a worker's particular employment are distinctive, i.e., different from, employments in general or activities of daily living."). As such, the traveling employee doctrine has not been applied to occupational diseases.

*Id.* at 95.

The Court of Appeals construed the phrase "arises naturally out of employment" too narrowly. We set forth the requirements for an occupational disease to "arise naturally out of employment" in *Dennis*, 109 Wn.2d 467.

In *Dennis*, the worker did not contract the disease, osteoarthritis, because of his employment. *Id.* at 468-69. Instead, his employment aggravated the disease. *Id.* The

Department took the position that Dennis could not receive benefits because he did not contract the disease as a result of his employment. *Id.* at 470-71. We rejected that argument. *Id.* at 471.

In *Dennis*, we began our analysis by applying the precept that we are to analyze the Act in favor of the employee.

> To this end, the guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.

*Id*. at 470.

As in this case, the Act could have been construed narrowly to preclude the worker from obtaining benefits. However, we interpreted the Act in favor of the injured worker, as we must, and held that liberally construed, Dennis was entitled to coverage. We stated:

> Focus upon these statutes alone, narrowly construed, would seem to result in exclusion from coverage of the condition here involved because the underlying disease did not arise from employment. The Department urges this construction, and argues that, as a threshold determination, the claimant's underlying disease must have been contracted as a result of employment conditions.
>
> Such a construction would, however, be contrary to the purpose of the Act. By expressly providing that workers suffering disability from occupational disease be accorded equal treatment with workers suffering a traumatic injury during the course of employment, RCW 51.32.180 effectuates the Act's purpose of providing sure and certain relief to *all* workers injured in their employment.

*Id*. at 470-71.  We noted that both aggravated injuries and aggravated occupational diseases arise out of employment conditions and accordingly both are covered under the Act.  *Id*. at 471.

We also found a worker must establish that their occupational disease came about as a matter of course as a natural consequence or incident of the distinctive conditions of their employment.  *Id*. at 481.

We then set out what a claimant must show, and what they do not need to show, to meet this requirement.

1. "The conditions need not be peculiar to, nor unique to, the worker's particular employment."  *Id*.

2. "[T]he focus is upon conditions giving rise to the occupational disease, or the disease-based disability resulting from work-related aggravation of a nonwork-related disease, and not upon whether the disease itself is common to that particular employment."  *Id*.

3. "The worker, in attempting to satisfy the 'naturally' requirement, must show that [their] particular work conditions more probably caused [their] disease or disease-based disability than conditions in everyday life or all employments in general."  *Id*.

4. "[T]he disease or disease-based disability must be a natural incident of conditions of that worker's particular employment."  *Id*.

5. "Finally, the conditions causing the disease or disease-based disability must be conditions of *employment*, that is, conditions of the worker's particular occupation as opposed to conditions coincidentally occurring in [their] workplace." *Id.*

Here, instruction 14 ensured that the jury had to find that Ms. Azorit-Wortham made these showings before it could find in her favor. As noted earlier, the traveling employee doctrine merely provides the time period for which there is insurance coverage for the employee—it does not change the requirements for how an occupational disease is defined. The traveling employee doctrine does not conflict with, nor alter, the statutory definition of "occupational disease."

## VII
### CONCLUSION

RCW 51.32.180 provides that an employee who contracts an occupational disease in the course of their employment is entitled to workers' compensation. An "occupational disease" is a disease that arises naturally and proximately out of employment. We construe the term "arises naturally" liberally in favor of finding coverage if it is reasonably possible to do so. This construction follows the legislature's purpose of providing sure and certain relief to all workers who are either injured or who contract an occupational disease while in the course of their employment.

The trial court informed the jury of the definition of "occupational disease" in instruction 14. The traveling employee instruction, instruction 9, did not change or alter that definition. Instead, it provided the time period during which the employee, Ms. Azorit-Wortham, would have insurance coverage under the Act. The jury found that Ms. Azorit-Wortham likely contracted COVID-19 either while working or while traveling for work. We reverse and remand to the Court of Appeals to consider the remaining issue in this case—whether substantial evidence supported the jury's verdict.[2]

---

[2] Ms. Azorit-Wortham requests attorney fees under RCW 51.52.130(1), which provides that a court shall award reasonable fees when a decision of the BIIA is reversed or modified to grant a worker additional relief. Because an open issue remains in this case, no decision has been made as to whether Ms. Azorit-Wortham will ultimately be granted additional relief. Therefore, we decline to award attorney fees at this stage.

_____
Mungia, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Johnson, J.

_____
Madsen, J.

_____

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Whitener, J.

No. 103488-1

GONZÁLEZ, J. (concurring in part, dissenting in part)—I concur with the substantive legal analysis in the majority opinion. But in my view, substantial evidence supports the jury's verdict and no remand to the Court of Appeals is necessary.[1]

Substantial evidence is evidence "'sufficient to persuade a fair-minded, rational person of the truth of the matter.'" *Potter v. Dep't of Lab. & Indus.*, 172 Wn. App. 301, 310, 289 P.3d 727 (2012) (quoting *R&G Probst v. Dep't of Lab. & Indus.*, 121 Wn. App. 288, 293, 88 P.3d 413 (2004)). We review the record in the light most favorable to Azorit-Wortham because she prevailed in superior court. *Robinson v. Dep't of Lab. & Indus.*, 181 Wn. App. 415, 425, 326 P.3d 744 (2014).

---

[1] While it did not explicitly address whether substantial evidence supports the jury's verdict, the Court of Appeals implicitly held that substantial evidence supports the verdict by remanding for a new trial. *Azorit-Wortham v. Dep't of Lab. & Indus.*, 32 Wn. App. 2d 84, 98-99, 554 P.3d 1235 (2024); *see also* Alaska Airlines Answer to Pet'r's Pet. for Rev. at 27 (opposing review because the Court of Appeals was given the "opportunity to order denial of the claim" but "did not").

1

We do not reweigh the evidence. *Value Vill. v. Vasquez-Ramirez*, 11 Wn. App. 2d
590, 596, 455 P.3d 216 (2019).

A worker claiming entitlement to benefits for an occupational disease carries
the burden of proving the disabling condition arose naturally and proximately out
of employment, which includes travel for work. *Dennis v. Dep't of Lab. & Indus.*,
109 Wn.2d 467, 481, 745 P.2d 1295 (1987); *see Ball-Foster Glass Container Co.
v. Giovanelli*, 163 Wn.2d 133, 142, 177 P.3d 692 (2008). Alaska Airlines does not
dispute that COVID-19 is a contagious disease and Azorit-Wortham contracted it.
Alaska Airlines argues that because the "virus was ubiquitous and present in
everyday life," it was "not a natural consequence of being a flight attendant." Br.
of Appellant Alaska Airlines at 30 (Wash. Ct. App. No. 58389-5-II (2023)). It
points to the fact that Azorit-Wortham could not identify who exposed her to
COVID-19 and that no "medical witness testified that, but for some distinctive
condition of employment," she would not have contracted it. *Id*.

Azorit-Wortham's work as an essential employee required prolonged
exposure to COVID-19 when others were to "Stay Home – Stay Healthy."[2] In the

---

[2] Proclamation by Governor Jay Inslee, No. 20-05 (Wash. Mar. 23, 2020),
https://governor.wa.gov/sites/default/files/proclamations/20-
25%20Coronovirus%20Stay%20Safe-Stay%20Healthy%20%28tmp%29%20%28002%29.pdf
[https://perma.cc/PJ48-WAEY].

*Azorit-Worthham v. Dep't of Lab. & Indus. and Alaska Airlines*, No. 103488-1
(González, J., concurring in part, dissenting in part)

period she likely contracted the virus, Azorit-Wortham's work required her to take eight flights from March 16 to March 27, 2020. Clerk's Papers at 295-99. She worked in a confined space less than six feet away from people without masks for extended periods of time. *Id*. at 308-09. As part of her work, Azorit-Wortham also used ground transportation, hotels, and airport shuttles. *Id*. at 295-99, 308-9. Finally, a medical witness testified Azorit-Wortham likely contracted the virus in a work setting and described her work conditions as a "perfect storm" for contracting it. *Id*. at 387, 429-31, 448.

The evidence was sufficient for the jury to determine the distinctive conditions of Azorit-Wortham's employment caused her to be more exposed to COVID-19 than she otherwise would be. Accordingly, I respectfully concur in part and dissent in part.[3]

_____
González, J.

_____
Montoya-Lewis, J.

_____

[3] While Azorit-Wortham did not request fees in her briefing to the Court of Appeals, I would grant her request for fees and costs because the jury verdict was reinstated because of her efforts. RAP 18.1(b); RCW 51.52.130.

3