# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BRYAN KELLEY, a married man as his separate property, and DORRE DON LLC, | ) ) ) |
| | DIVISION ONE |
| Appellants, | ) ) ) |
| | No. 74423-2-I |
| v. | ) ) ) |
| BEVERLY L. TONDA and MICHAEL E. TONDA, husband and wife and the marital community composed thereof, KENNAN T. SOUTHWORTH and PATRICIA C. SOUTHWORTH, husband and wife, KING COUNTY WASHINGTON, a Washington municipal corporation, CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY OF WASHINGTON (or its successors in interest), | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | PUBLISHED OPINION |
| Respondents. | ) ) |
| | FILED: March 27, 2017 |

DWYER, J. — Some cases simply must be tried. In today's legal culture, there seemingly prevails a belief that all lawsuits are somehow, someway subject to resolution by dispositive motion. But that never has been—and never will be— true. Instead, even where, as here, all of the key participants and eye witnesses are long since dead, a trial is necessary when the material facts are not agreed.

In this lawsuit, the key material fact in question is the bilateral intent of the parties to a conveyance of real property. The conveyance took place more than a century ago. Those involved in negotiating the transaction died long ago. Almost all of the pertinent evidence is documentary in nature. But none of these

circumstances renders a trial unnecessary. To the contrary, because the evidence proffered raises competing inferences as to the intent of the parties to the transaction, fact-finding by trial is indispensable. Because the superior court viewed the situation otherwise, we reverse.

I

Bryan Kelley owns real property abutting Dorre Don Way in Maple Valley, Washington. His property adjoins Kennan and Patricia Southworths' property, which adjoins Beverly and Michael Tondas' property. In dispute is a 40-foot strip of land adjacent to Kelley's and the Southworths' property, extending down from Dorre Don Way and terminating before reaching the Tondas' property (labeled "Right of Way" below). A gravel driveway extends down the right-of-way, providing the Southworths and the Tondas with access to Dorre Don Way. From the end of the right-of-way to the edge of the Tondas' property is a separate tract of land that is not here at issue.



Since moving to Maple Valley in 1995, the Tondas have routinely used the driveway to reach Dorre Don Way and, from there, have crossed a small strip of land leading down to a public trail known as the Cedar River Trail. The Tondas state that the Southworths have taken numerous steps to prevent them from using the driveway, including planting trees in the driveway, moving boulders to block the driveway, and installing a locked gate to prevent the Tondas from accessing Dorre Don Way and the driveway upon returning home from the trail. For his part, Kelley maintains a fence around his property that partially protrudes into the right-of-way, although it does not prevent vehicles from accessing the driveway.

Unable to amicably resolve their neighborly differences, the Tondas sought assistance from King County. In a letter addressed to all three neighbors in 2005, the King County Road Services Division stated that it had determined that the driveway is "within a 40-foot strip of land that was originally deeded to King County for public highway purposes in 1908." In this letter the County also stated that it does not recognize the restrictions and provisions included in a recorded private easement purported to extend over the public right-of-way, that the County would install road signage at the intersection of the driveway and Dorre Don Way, and that all fencing within the right-of-way needed to be removed. The King County Division of Parks and Recreation also sent a letter to the Southworths, informing them that they needed to remove the fence along the trail corridor.

The County has repeatedly attempted to obtain compliance from Kelley and the Southworths. In early 2006, a county attorney sent a letter to the Southworths ordering them to remove all trees, rocks, and fencing within the right-of-way. In September of the same year, the King County Department of Development and Environmental Services sent a letter to Kelley ordering him to remove the portion of his fence that partially blocked the right-of-way, stating that he would be billed for all subsequent compliance inspections.

The Tondas then petitioned the County for permission to restore the driveway to its 1994 width—which would necessitate removing the trees and rocks extending down the sides of the driveway. The County required the Tondas to obtain the relevant permits and surveys prior to restoration. Before they could do so, the Southworths filed a petition asking the County to vacate the right-of-way. A hearing was held on the matter in April of 2009. A hearing examiner denied the petition. The Southworths appealed the hearing examiner's decision to the King County Council, which adopted the findings of the hearing examiner and denied the petition. Thereafter, the Tondas received a boundary line adjustment and the County granted them a permit to build a residence on their second lot, restore the width of the driveway, and remove obstructions from the right-of-way.

Kelley commenced this action before such work began. The trial court granted summary judgment in favor of the Tondas, concluding that the public

right-of-way was originally conveyed to the County in 1907 and is still in existence today. Kelley timely appealed.[1]

II

A

We review de novo a trial court's order granting summary judgment, performing the same inquiry as the trial court. MacMeekin v. Low Income Hous. Inst., Inc., 111 Wn. App. 188, 195, 45 P.3d 570 (2002). An order granting summary judgment may be entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a summary judgment order, we view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Holmquist v. King County, 182 Wn. App. 200, 207, 328 P.3d 1000 (2014).

"The object and function of summary judgment procedure is to avoid a useless trial. A trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact." Barber v. Bankers Life & Cas. Co., 81 Wn.2d 140, 144, 500 P.2d 88 (1972). "A material fact is one upon which the outcome of the litigation depends." Balise v. Underwood, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). Importantly, "even if the basic facts are not in dispute, if the facts are subject to reasonable conflicting inferences, summary judgment is improper." Southside Tabernacle v. Pentecostal Church of God, Pac. Nw. Dist.,

---

[1] Although the Southworths are named as respondents in this matter, they side with Kelley on appeal and ask us to conclude that the trial court erred by granting summary judgment. The Tondas ask us to strike the Southworths' brief. No authority is cited that would compel such an action. Instead, we will consider the Southworths' contentions to the extent that they are relevant and properly raised.

Inc., 32 Wn. App. 814, 821, 650 P.2d 231 (1982). Indeed, "[s]ummary judgment procedures are not designed to resolve inferential disputes." Sanders v. Day, 2 Wn. App. 393, 398, 468 P.2d 452 (1970). "It seems obvious that in situations where, though evidentiary facts are not in dispute, different inferences may be drawn therefrom as to ultimate facts such as intent, . . . a summary judgment would not be warranted." Preston v. Duncan, 55 Wn.2d 678, 681-82, 349 P.2d 605 (1960); accord Weisert v. University Hosp., 44 Wn. App. 167, 172, 721 P.2d 553 (1986).

The purpose of contract interpretation is to ascertain the intent of the parties. Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 274, 279 P.3d 943 (2012). Washington courts "follow the objective manifestation theory of contracts." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Under this approach, "[w]hen interpreting an agreement, we focus on the agreement's objective manifestations to ascertain the parties' intent." Martin v. Smith, 192 Wn. App. 527, 532, 368 P.3d 227, review denied, 186 Wn.2d 1011 (2016).

A contract may consist of one or several writings. Smith v. Skone & Connors Produce, Inc., 107 Wn. App. 199, 206, 26 P.3d 981 (2001). All writings that are part of the same transaction are interpreted together. RESTATEMENT (SECOND) OF CONTRACTS § 202(2) (1981).

> [T]he terms of agreement may be expressed in two or more separate documents, some of these containing promises and statements as to consideration, and others, such as deeds . . . embodying performances agreed upon rather than a statement of terms to be performed. In every such case, these documents

should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others.

5 MARGARET N. KNIFFEN, CORBIN ON CONTRACTS § 24.21, at 216 (1998). Writings are one indication of the parties' intent, but are not necessarily determinative of that intent. Indeed, this is why writings—not contracts—are reformed to reflect the true intent of the parties. W. Coast Pizza Co. v. United Nat'l Ins. Co., 166 Wn. App. 33, 41, 271 P.3d 894 (2011) (citing A&A Sign Co. v. Maughan, 419 F.2d 1152, 1156 (9th Cir. 1969)).

In Berg v. Hudesman, 115 Wn.2d 657, 669, 801 P.2d 222 (1990), our Supreme Court rejected the theory that contract language must be ambiguous before evidence of the surrounding circumstances is admissible. Accordingly, we may consider extrinsic evidence to assist us in ascertaining the intent of the parties in entering into a contract, regardless of whether the language used in the writings is deemed ambiguous. Hearst Commc'ns, Inc., 154 Wn.2d at 502 ("[I]ntent of the contracting parties cannot be interpreted without examining the context surrounding an instrument's execution." (citing Berg, 115 Wn.2d at 668)).

> The court may consider (1) the subject matter and objective of the contract, (2) the circumstances surrounding the making of the contract, (3) the subsequent conduct of the parties to the contract, (4) the reasonableness of the parties' respective interpretations, (5) statements made by the parties in preliminary negotiations, (6) usages of trade, and (7) the course of dealing between the parties.

Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 129 Wn. App. 303, 311, 119 P.3d 854 (2005) (citing Berg, 115 Wn.2d at 666-68). However, admissible extrinsic evidence does not include: (1) "[e]vidence of a party's unilateral or subjective intent as to the meaning of a contract word or term;" (2)

"[e]vidence that would show an intention independent of the instrument; or" (3) "[e]vidence that would vary, contradict or modify the written word." Hollis v. Garwall, Inc., 137 Wn.2d 683, 695, 974 P.2d 836 (1999).

Contract interpretation is a question of fact when a court relies on inferences drawn from extrinsic evidence, but is a question of law when "(1) the interpretation does not depend on the use of extrinsic evidence or (2) only one reasonable inference can be drawn from the extrinsic evidence." Spectrum Glass Co., 129 Wn. App. at 311. As noted above, summary judgment is inappropriate when more than one reasonable inference can be drawn from the extrinsic evidence. Kries v. WA-SPOK Primary Care, LLC, 190 Wn. App. 98, 120, 362 P.3d 974 (2015). Similarly, if two or more meanings are reasonable, a question of fact is presented. GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014).

B

The pertinent history of the 40-foot strip of land dates back to the early twentieth century, when it was owned by the Chicago, Milwaukee & St. Paul Railway Company of Washington (Railroad). During that time, the Railroad was engaged in a project to expand to the Pacific Northwest. In order to secure the land necessary for such an expansion, the Railroad entered into a number of agreements with local governments for the exchange or purchase of land. Several such agreements occurred between the Railroad and King County.

In 1907, the Railroad identified several strips of land owned by King County that it wished to obtain for purposes of constructing a railway from King

County to Idaho. The parties subsequently entered into a written agreement to memorialize the desired exchanges of land. This 1907 writing describes the county land that the Railroad wished to obtain as well as the obligations and promises to be carried out by the parties in order to effectuate the desired land exchanges.

> Whereas, the [Railroad] *desires the right to appropriate*, use and occupy the County road first above described between the southerly line of the right of way of a certain "Y" track of the said Columbia & Puget Sound Railway, and a point upon Block one (1) of the town of Maple Valley, and also *desires to discontinue the use* of that portion of the County road secondly above described . . . *upon the terms and conditions hereinafter set forth.*

(Emphasis added.)

The remainder of the 1907 writing similarly describes primarily future obligations, promises, and conditions. However, the writing also contains fleeting statements of **present**-tense actions interspersed between the contemplated obligations to be carried out in the *future*. The land at issue in this matter is described by the third paragraph of the 1907 writing.

> 1st. The [County] **hereby grants** to the [Railroad], its successors and assigns, *upon the performance* of the conditions hereinafter mentioned, the right, privilege and authority to appropriate, use and occupy for railroad purposes a portion of that certain County road . . . [description of other land].

> 2nd. In consideration of the foregoing agreement, the [Railroad] agrees to, and **does hereby, dedicate** to the [County] for highway purposes, a strip of land forty (40) feet in width . . . [description of other land].

> 3rd. The [Railroad] hereby agrees to, **and does hereby dedicate**, to the [County], for highway purposes, a strip of land forty (40) feet in width . . . [description of strip of land at issue] . . . and in consideration of such dedication, the [County] *agrees to vacate and*

- 9 -

*discontinue* the use of [other land]; it being the *intention hereof to discontinue and avoid* a grade crossing of the railway . . . .

4th. The [Railroad] *agrees that it will* grade and place in a suitable condition for public travel, the strips of land *hereinbefore agreed to be dedicated* for the purposes of County roads as aforesaid.

5th. Attached hereto is a plat showing the portion of the County road *to be used and appropriated* by the [Railroad], and the portion of the County road *to be discontinued* within the lines of the right of way of the [Railroad] . . . and the strips of land *to be dedicated* to the [County] for the purposes of County roads . . . .

(Emphasis added.)

Although the 1907 writing was recorded, it neither purports to be a deed nor a conveyance. Rather, it concludes that "the parties hereto have caused this *agreement* to be executed." (Emphasis added.)

The following year, the Railroad executed a deed. This 1908 deed states that the Railroad, "in consideration of one dollar ($1.00) to it in hand paid, and other considerations, does hereby grant, convey and dedicate to the [County], in the State of Washington, the following described tracts of land . . . ." The deed then describes the 40-foot strip of land at issue in this matter. The 1908 deed continues,

TO HAVE AND TO HOLD unto the County of King and its successors, so long as the said strips of land shall be used for the purposes of public roads or highways, and in case such use of said strips, or either of them, shall cease, all the right, title and interest hereby granted and conveyed shall, as to the strip or strips so ceased to be used as foresaid, revert to the [Railroad], its successors or assigns.

This instrument of dedication is executed in pursuance of two certain agreements between said railway company and the County of King, one dated July 28th, 1907, and recorded April 21st, 1908, in Volume 572 of Deeds, Page 355, covering tracts Numbers

- 10 -

1 and 2, above described, and one dated June 18th, 1907, and
recorded April 21st, 1908 in Volume 530 of Deeds, page 500
covering tract Number 3 above described.

Thus, the 1908 deed purports to convey an interest in the same 40-foot strip of land to the County as was described in the 1907 writing, although this time with certain conditions and differing terms regarding the use of that land.

The parties here agree that the County came to have an interest in the 40-foot strip of land. They dispute, however, by which document of conveyance the County received that interest. The Tondas contend that the language in the third paragraph of the 1907 writing was sufficient to convey an interest to the County. Conversely, Kelley contends that the 1907 agreement was an unenforceable executory contract and that the County received its interest by means of the 1908 deed. Resolution of this dispute requires us to examine the intent of the parties. Roats, 169 Wn. App. at 274. In determining the parties' intent, we are not precluded from considering the circumstances surrounding the contract and the subsequent acts of the parties. Berg, 115 Wn.2d at 666-67. Moreover, we will not adopt a contract interpretation that renders part of the contract absurd or meaningless. Spectrum Glass Co., 129 Wn. App. at 312.

We first note that the language of the third paragraph of the 1907 writing appears clear and unambiguous—stating that the Railroad "hereby agrees to, and does hereby dedicate" the strip of land to the County.[2] This language gives

---

[2] Kelley asserts that the consideration contemplated by the third paragraph failed. Thus, he contends, any conveyance of land also failed. He cites to nothing in the record to support such an assertion. In any event, even assuming that the consideration did fail, a conveyance of land will not be set aside for a failure of consideration. Inv. & Sec. Co. v. Adams, 192 Wash. 41, 50, 72 P.2d 288 (1937) ("[I]n the absence of fraud, a deed or lease of real estate will not be set aside as for a failure of consideration, on the sole ground that the promises and agreements

- 11 -

rise to an inference that the parties intended the 1907 agreement to convey an interest in land. But our inquiry does not end when encountering perceived clarity.[3] When the specific language of the third paragraph is considered in light of the entire writing, the intent to presently convey an interest in land becomes less certain. As discussed above, the 1907 writing primarily contemplates *future* obligations and an *intent* to exchange land. When considered as a whole, the writing appears to be an exchange of promises.

The mixed language of the 1907 writing—seemingly contemplating both present and future conveyances, obligations, and conditions—obfuscates the intent of the parties. Indeed, although the specific language of the third paragraph gives rise to an inference that the parties intended to presently convey an interest in land, the unconditional dedication of land seems out of place when considered in light of the writing as a whole.

To aid us in determining the intent of the parties, we next consider the context of the entire transaction. Particularly illuminating is the subsequent conduct of the parties. Just one year after entering into an agreement concerning the disputed 40-foot strip of land, the Railroad caused to be drafted a deed, executed "in pursuance of" the 1907 agreement, purporting to convey to the County an interest in that same land. The County then accepted that deed and caused the deed to be recorded. These overt actions indicate that the

---

which entered into its execution and were to be performed *in futuro* have not been performed.'" (quoting 4 RULING CASE LAW *Cancellation of Instruments* § 14, at 500 (1914))).

    [3] See, 5 MARGARET N. KNIFFEN, supra, § 24.7, at 36 ("Before the meaning of words in a contract can be plain and clear, at least some of the surrounding circumstances must be known; and proof of the circumstances may make plain and clear a meaning that was not apparent when in the absence of such proof some other meaning seemed plain and clear.")

parties did *not* operate with the understanding that the Railroad had already dedicated that land to the County in 1907. Rather, such actions give rise to an inference that the parties intended to convey an interest in the land in 1908.

The Tondas contend that any competing inference arising from the existence of the 1908 deed cannot be considered. This is so, they assert, because such an inference would vary the terms of the 1907 writing and therefore constitute inadmissible extrinsic evidence. The Tondas' reasoning rests on the basic principle that one cannot impose conditions on the use of land after one's interest in that land has already been conveyed. But this assertion requires us to presuppose that the parties intended to convey an interest in land in 1907. Inferences drawn from the context of the 1907 agreement and the subsequent conduct of the parties preclude us from making such an assumption as a matter of law.[4] Indeed, a contract interpretation that ignores the 1908 deed necessarily renders that document meaningless, contrary to the applicable principles of contract interpretation. Spectrum Glass Co., 129 Wn. App. at 312.

The trial court herein granted summary judgment in favor of the Tondas, concluding that the language of the 1907 writing was effective to convey a right-of-way to the County and that the 1908 deed, insofar as it purports to place any restrictions or conditions on the use of that land, is ineffective. In so concluding,

---

[4] The Tondas' assertion that competing inferences arising from the 1908 deed cannot be considered on a motion for summary judgment led to the strange assertion during oral argument that the 1908 deed would not even be admissible in a trial to resolve the question of whether the land was conveyed by the 1907 document or by the 1908 document. Wash. Court of Appeals oral argument, Kelley & Don v. Tonda, No. 74423-2-I (Jan. 18, 2017), at 16 min. to 16 min., 45 sec. (on file with court).

the trial court necessarily determined that the existence of the 1908 deed raised no competing inferences as to the intent of the parties. By ruling thusly, it erred.

Contract interpretation is a question of fact when extrinsic evidence is relied on and more than one reasonable inference can be drawn from that evidence. Spectrum Glass Co., 129 Wn. App. at 311. The language of the 1907 writing, context of the 1907 agreement, and subsequent acts of the parties in executing a deed and causing that deed to be recorded give rise to competing inferences. When considered in the light most favorable to the nonmoving party, we cannot declare that no genuine issues of material fact remain in this matter. Accordingly, the trial court erred by disregarding the 1908 deed and by granting summary judgment in favor of the Tondas based solely on the 1907 writing. The parties' intent in this matter is an issue of fact, unresolvable by summary judgment.

C

The parties also dispute the type of interest in land that the County received from the Railroad. Although we do not decide by which document of conveyance the County received an interest, it is nevertheless prudent to discuss those interests in land that are contemplated by the documents here at issue.

"In general, when construing a deed, the intent of the parties is of paramount importance and the court's duty to ascertain and enforce." Brown v. State, 130 Wn.2d 430, 437, 924 P.2d 908 (1996). "So long as" language in a deed is limiting language that creates a reversionary interest in the grantor. Wash. State Grange v. Brandt, 136 Wn. App. 138, 150, 148 P.3d 1069 (2006).

However, such language may convey either a fee or an easement, depending on the context of the entire agreement. King County v. Squire Inv. Co., 59 Wn. App. 888, 894, 801 P.2d 1022 (1990).

The dedication of a strip of land to serve as a public road or highway indicates an easement over that land, rather than a fee. See Kiely v. Graves, 173 Wn.2d 926, 934, 271 P.3d 226 (2012) ("In our many railroad cases, we have held that when a grant specifies a strip of land is to be used for a particular purpose, for example as a right-of-way, the grant generally creates an easement." (citing Brown, 130 Wn.2d at 439-40)).

> "Any deed to a local government specifically for highway, right of way, or any public purpose could be interpreted as a dedication conveying an easement only. If the intent is to grant a fee interest, that intent should be clearly stated and the use should be unrestricted or, if the use is a condition, the condition should be clearly stated with a specific right of reversion."

Kiely, 173 Wn.2d at 934 (quoting 6 Washington State Bar Association, Washington Real Property Deskbook § 91.9(1) (3d ed. 2001)).

The words of conveyance in the 1907 writing give rise to the inference that the County received an easement. The 1907 writing "dedicate[s]" to the County a strip of land "for highway purposes." This language is consistent with language commonly used to grant an easement over land. Moreover, the 1907 writing contains no clearly stated intent to grant a fee interest. See Kiely, 173 Wn.2d at 932. Accordingly, we are satisfied that—if it is finally determined to be the document of conveyance—the 1907 agreement contemplates the dedication of an easement.

The interest contemplated by the 1908 deed is not so apparent.[5] The 1908 deed is not substantially in the form of a statutory deed.[6] Thus, no presumption arises that the deed conveyed a fee. Ray v. King County, 120 Wn. App. 564, 576, 86 P.3d 183 (2004). The 1908 deed uses the determinable language "so long as" and "revert to the [Railroad]," commonly used when conveying a determinable fee, but it also expresses a *purpose* for the conveyance, rather than a mere restriction on the use of the land. See Pac. Iron Works v. Bryant Lumber & Shingle Mill Co., 60 Wash. 502, 505, 111 P. 578 (1910) (conveyance "'forever, *for railway purposes, but if it should cease to be*

---

[5] It is clear, however, that the 1908 deed does not convey a fee simple subject to condition subsequent, as the Tondas claim. A grant of a fee simple subject to condition subsequent contains the words "subject to" or "but if" coupled with the words "right of re-entry" or "right to enter and retake" and further requires that the grantor re-enter and retake the land upon failure of the specified condition. Metro. Park Dist. of Tacoma v. Rigney's Unknown Heirs, 65 Wn.2d 788, 790-91, 399 P.2d 516 (1965); 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 1.11, at 15 (2d ed. 2004). None of these words are present in the 1908 deed. Thus, the Railroad or its successors in interest were not required to take any action upon the failure of the condition to trigger or facilitate the reversion of the interest to the grantor or its successors.

[6] Washington law during 1908 provided for three types of deeds:

**Form of Warranty Deed.** §3. That warranty deeds for the conveyance of land, may be substantially in the following form: The grantor (here insert the name or names and place of residence,) for and in consideration of (here insert consideration), in hand paid, convey and warrant to (here insert the grantee's name or names), the following described real estate (here insert description), situated in the county of __, State of Washington. . . .

. . . **Form of Bargain and Sale Deed.** §4. Bargain and sale deeds for the conveyance of land may be substantially in the following form: The grantor (here insert name or names and place of residence), for (and) in consideration of (here insert consideration) in hand paid, bargain, sell and convey to (here insert the grantee's name or names,) the following described real estate (here insert description,) situated in the county of __, State of Washington. . . .

. . . **Form of Quit Claim Deed.** §5. Quit-claim deeds may be in substance in the following form: The grantor (here insert name or names and place of residences), for the consideration (here insert consideration,) convey and quit-claim to (here insert grantee's name or names) all interest in the following described real estate (here insert description), situated in the county of __, State of Washington. . . .

PIERCE'S CODE § 4451-53 (Supp. 1905). Here, the 1908 deed does not use the words "warrant," "bargain," or "quit-claim." Rather, it "grant[s], convey[s] and dedicate[s]" the land to the County. Thus, the 1908 deed is not substantially in the form of any statutory deed.

- 16 -

*used for a railway the said premises shall revert to said grantors,'"* created an easement rather than a determinable fee). The character of the land and circumstances surrounding the 1908 deed also give rise to an inference that the parties contemplated an easement. The conveyance is for a strip of land for highway purposes—out of character for a fee conveyance—and was executed in pursuance of the 1907 writing, which also contemplated an easement.

The language of the 1908 deed and the context surrounding the deed give rise to competing inferences regarding the type of interest that was conveyed by the Railroad.[7] Here, as before, the intent of the parties to convey an easement or a fee is a question of fact that may be illuminated by additional evidence presented on remand. Accordingly, we do not conclude as a matter of law the precise interest in land contemplated by the 1908 deed.

III

Kelley next contends that the trial court erred by concluding that the County's interest in the strip of land can only be extinguished by complying with a statutory vacation process. Even in the absence of a determination of the precise interest the County received, it is clear the statutory vacation process[8] discussed by the trial court is not applicable.

The County's interest in the strip of land, whether an easement or determinable fee, cannot exceed the interest granted to it by the documents of conveyance. The Railroad or its successors in interest thus retains either a

---

[7] Again, this issue only arises if, on remand, the trier of fact finds that the 1908 deed was the document of conveyance.

[8] RCW 36.87.010, .060; King County Code 14.40.010, .015.

- 17 -

possessory interest encumbered by a servitude or a possibility of reverter, respectively. A statute which acts to destroy that interest would constitute the taking of a property interest without just compensation. Cf. WASH. CONST. art. I, § 16; see Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 831-32, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987) (concluding that a statutory scheme requiring property owners to make an easement across their property available to the public on a permanent basis constitutes a taking); see also Lawson v. State, 107 Wn.2d 444, 457, 730 P.2d 1308 (1986) (concluding that the plaintiffs held reversionary interests in land over which an easement was granted, requiring the payment of just compensation before the land could be acquired by the county).

Nelson v. Pacific County, 36 Wn. App. 17, 671 P.2d 785 (1983), upon which the trial court relied, is inapt. The right-of-way in dispute in Nelson was unconditionally dedicated to the public by way of a plat, and the issue therein was whether the county's prior stipulation that it had no interest in that right-of-way constituted an abandonment of the right-of-way. We concluded in Nelson that the county could not abandon a right-of-way held in trust for the public in such a manner. 36 Wn. App. at 23 (citing Commercial Waterway Dist. No. 1 of King County v. Permanente Cement Co., 61 Wn.2d 509, 513, 379 P.2d 178 (1963) (concluding that an easement held in trust for the public cannot be vacated by adverse possession)). Our conclusion in Nelson in no way forecloses the possibility that a county's conditional interest in land might terminate by operation of law upon failure of a required condition. Indeed, if this were not the

case, virtually any conditions placed on a county's use of conveyed land would be ineffective.

Although no formal vacation proceeding is required for the County's interest in the strip of land to revert back to the Railroad or its successors in interest, a material issue of fact remains as to whether the County's interest has otherwise failed. Kelley contends that it has. Yet, many of Kelley's assertions regarding the history of the use of the strip of land are unsupported by the record before us.

First, Kelley asserts that the County has admitted that the public no longer uses the right-of-way. However, the letter from the County that he cites in support of this assertion says nothing of the sort. Rather, it states the opposite.

> In 1930, when the current alignment of Dorre Don Way . . . was established in your area, the gravel road remained open to the public as part of a short public loop-road starting and ending along Dorre Don Road. . . .
>
> Over the years, the former loop-road has seen reduced public use such that the only portion of the former loop-road that has *remained open to vehicular traffic* is your privately maintained gravel drive.

(Emphasis added.) The letter continues, "The County does not recognize the restrictions and provisions included in the private easement recorded over the public right-of-way since the easement was recorded over pre-existing public right-of-way."

The mere fact that the right-of-way is used almost exclusively by the residents who live alongside it does not mean that the County's interest has been extinguished. See Foster v. Bullock, 184 Wash. 254, 259, 50 P.2d 892 (1935) ("The fact that . . . the stretch here involved forms a *cul de sac*[] does not deprive

- 19 -

it of its character as a public highway."). Indeed, the County concluded as recently as 2009 (by denying the vacation request) that the right-of-way has value as part of the County road system.

Kelley also contends that the County's interest in the strip of land was vacated by its failure to "open" the right-of-way. Yet Kelley provides no authority requiring the County to open the right-of-way in order to preserve its interest as a matter of law.[9] Moreover, Kelley's assertion that the right-of-way was never opened rests not on any evidence in the record but, rather, on the absence of evidence to the contrary. This issue was not reached by the trial court, and the record on appeal is insufficient to resolve it as a matter of law.

As the trial court granted summary judgment in favor of the Tondas based on the 1907 agreement, and concluded that a formal vacation process was required before the County's interest in the strip of land could be extinguished, it did not reach the issue of whether the County's interest in the right-of-way has otherwise failed. As this issue was not considered by the trial court, and the record on appeal is insufficient to reach a conclusion as a matter of law, it is a matter for the trial court to resolve on remand.[10]

---

[9] The authority presumably relied on by Kelley that requires counties to "open" public roads within five years of their dedication is RCW 36.87.090. Prior to 1909, any county road which remained unopened for public use for a period of five years was vacated as a matter of law. Leonard v. Pierce County, 116 Wn. App. 60, 64, 65 P.3d 28 (2003). In 1909, the legislature added a proviso exempting public roads and highways conveyed by deed to any county, city, or town. In cases where the five-year period had not run by the time the 1909 proviso was added, the proviso acted to save a county's interest in the road. Leonard, 116 Wn. App. at 65. Thus, the County's interest in the right-of-way at issue here, which was conveyed by deed in 1908, would have been saved by the 1909 proviso.

[10] Kelley also contends that the trial court erred by concluding that neither claim preclusion nor issue preclusion prevent the current litigation. We disagree. In 1995, the County agreed to a stipulated judgment declaring that the County's interest in a 16-foot alleyway that partially intersects the current location of the 40-foot right-of-way had been extinguished by

IV

Finally, it is prudent to address the County's position taken on appeal in this matter.

The property that Kelley and the Southworths now own was originally sold to their predecessors in interest pursuant to a tax foreclosure sale. Kelley argued before the trial court that the County did not expressly claim an interest in the right-of-way during these tax foreclosure sales, which, he asserted, was evidence that the right-of-way did not exist. The County moved for summary judgment, asking the trial court to conclude that the merger doctrine—which, the County asserted, was implicated by Kelley's claims—did not apply to invalidate the County's interest in the right-of-way. The trial court granted the County's motion and Kelley did not appeal that order.

On appeal from the trial court's grant of summary judgment in favor of the Tondas, the County has taken the perplexing position that its interest in the right-of-way is settled pursuant to the trial court's decision on the merger issue. To the contrary, the County's interest in the right-of-way continues to be the center of this litigation and the County will remain an indispensable party—with its interest in the land still at issue—on remand.

---

operation of law. But the alleyway was vacated by operation of law before the 40-foot right-of-way was ever conveyed to the County. The 1995 stipulated judgment did not involve the same facts, legal principles, or parties as are involved in this dispute. Thus, claim and issue preclusion are not applicable herein. See, e.g., Lemond v. Dep't of Licensing, 143 Wn. App. 797, 805, 180 P.3d 829 (2008); Kelly-Hansen v. Kelly-Hansen, 87 Wn. App. 320, 330, 941 P.2d 1108 (1997).

Reversed and remanded.

_Dwyer, J._

We concur:

_Spearman, J._          _Becker, J._

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 MAR 27 AM 8: 21