**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

|  |  |
|---|---|
| CONWAY CONSTRUCTION COMPANY, | No. 80649-1-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| CITY OF PUYALLUP, |  |
| Appellant. |  |

LEACH, J. — In this public works contract case, the City of Puyallup (the City) appeals a trial court decision finding that it improperly terminated Conway Construction Company's (Conway) contract for road improvements and awarding Conway damages plus attorney fees and costs. Substantial evidence supports the trial court's findings of fact and they support its legal conclusions. But, Conway was not entitled to recover attorney fees because it did not submit an offer of settlement as required by statute. So, we affirm the trial court's judgment for damages but reverse its award of attorney fees to Conway.

**FACTS**

The City and Conway contracted for road improvements (the project). The public works contract included a "Public Works Contract" form and incorporated by reference several voluminous documents, including the Washington State Department of Transportation Standard Specifications for Road, Bridge, and Municipal Construction.

Citations and pincites are based on the Westlaw online version of the cited material.

During construction, the City became concerned about the quality of pavement concrete, defects in utilities, and other construction defects, and issued notices to Conway describing these concerns. The City also observed unsafe work conditions, such as lack of trench shoring, and reported those concerns to the Washington State Department of Labor & Industries (L&I).

On March 9, 2016, the City gave Conway a notice of suspension and breach of contract.[1] This notice identified nine items that it deemed contract breaches. These included defective and uncorrected work and safety concerns. It advised Conway that it had 15 days to remedy the listed issues. Conway denied any wrongdoing.

On March 21, 2016, the City informed Conway that it still needed to remedy the same nine items and that it had received further reports of safety violations. Conway again denied the safety violation allegations.

On March 25, 2016, the City issued a notice of termination for default to Conway. The City also withheld payments due to Conway.

On April 23, 2016, L&I issued a citation to Conway for a "serious" safety violation endangering Conway workers.

Conway sued the City asking the court to declare termination for default improper and deemed it to be for public convenience. Conway later amended its request to include breach of contract and unjust enrichment claims. After a bench trial, the court found the City breached the contract when it terminated Conway. It awarded Conway damages,

---

[1] This exhibit is dated March 9, 2015. This is an obvious scrivener's error because it references a Non-Conformance Report dated March 3,2016 and the parties had not yet entered their contract on March 9, 2015. Exhibits 53, 58, and 59 contain similar dating errors.

attorney fees, and costs. The City appeals.

## STANDARD OF REVIEW

We review a party's challenge to a trial court's decision when the trial court has evaluated the evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the court's conclusions of law.[2] Substantial evidence is evidence sufficient to persuade a fair-minded person of its truth.[3] Evidence may be substantial even if there are other reasonable interpretations of the evidence.[4]

We defer to the trial court's determinations about persuasiveness of the evidence, witness credibility, and conflicting testimony.[5] We will not disturb a trial court's ruling if substantial, though conflicting, evidence supports its findings of fact.[6]

## ANALYSIS

The City raises three issues on appeal. First, it claims the trial court used the wrong test to determine if the City properly terminated the project contract for default. Next, it claims the contract entitles it to an offset for Conway's defective work. Finally, it contends Conway is not entitled to recover attorney fees because it did not make a statutorily required offer of settlement. We agree that Conway is not entitled to recover attorney fees, but we reject the City's other claims.

---

[2] Standing Rock Homeowners Ass'n v. Misich, 106 Wn. App. 231, 242-43, 23 P.3d 520 (2001).
[3] Hegwine v. Longview Fibre Co., Inc., 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006).
[4] Sherrell v. Selfors, 73 Wn. App. 596, 600-01, 871 P.2d 168 (1994).
[5] Snyder v. Haynes, 152 Wn. App. 774, 779, 217 P.3d 787 (2009).
[6] Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

<u>Contract Termination – Breach of Contract</u>

<u>Standard for Termination</u>

We first address the City's claim that the trial court did not use the correct test to decide whether the City properly terminated Conway for default. The City contends the trial court should have used the following two part test (1) was Conway in default, and (2) was the City satisfied with Conway's efforts to remedy the breach. Conway claims the City had to satisfy a different two part test (1) was Conway in default, and (2) did Conway neglect or refuse to correct rejected work. Conway also asserts that any error the trial court made in applying the correct test was harmless.

The City correctly notes the parties' contract form contains two termination provisions. First, paragraph 22 of the contract provides that violation of a statute or regulation is "good cause" for terminating the contract:

> 22. Termination. The City shall be entitled to terminate this Contract for good cause. "Good cause" shall include, but shall not be limited to, any one or more of the following events:
>
> d. Contractor's failure to comply with Federal, state or local laws, rules or regulations

Second, the contract incorporates the Washington State Department of Transportation ("WSDOT") Standard Specifications for Road, Bridge, and Municipal Construction (2014), which provided the general terms of the contract. Section 1-08.10(1) of these specifications contains terms relating to termination of the contract and allows the contracting agency to terminate the contract upon the occurrence of any one or more of the following events:

4

1. If the Contractor fails to supply sufficient skilled workers or suitable materials or equipment;

2. [Inapplicable]

3. [Inapplicable]

4. If the Contractor disregards laws, ordinances, rules, codes, regulations, orders or similar requirements of any public entity having jurisdiction;

5. If the Contractor disregards the authority of the Contracting Agency;

6. If the Contractor performs Work which deviates from the Contract, and neglects or refuses to correct the rejected Work; or

7. If the Contractor otherwise violates in any material way any provisions or requirements of the Contract.

Once the Contracting Agency determines that sufficient cause exists to terminate the Contract, written notice shall be given to the Contractor and its Surety indicating that the Contractor is in breach of the Contract and that the Contractor is to remedy the breach within 15 calendar days after the notice is sent.... If the remedy does not take place to the satisfaction of the Contracting Agency, the Engineer may, by serving written notice to the Contractor and Surety either:

1. Transfer the performance of the Work from the Contractor to the Surety; or

2. Terminate the Contract …

The contract form contains the following provision addressing conflicts between the form and the attached specifications, "This Contract and any attachments contain the entire Contract between the parties. Should any language in any attachment conflict with any language contained in this Contract, the terms of this Contract shall prevail." So, if any provision of the specifications conflicts with paragraph 22, then paragraph 22 controls. The City relies on this conflict coordination provision to assert that once Conway violated a state safety regulation, paragraph 22 gave it the right to terminate the contract without providing the cure opportunity found in Section 1-08.10(1). We disagree.

5

Washington courts "'follow the objective manifestation theory of contracts.'"[7] So, we "focus on the agreement's objective manifestations to ascertain the parties' intent."[8] We look to the face of the agreement, but when the language is ambiguous, we may also look to extrinsic evidence of intent.[9]

Paragraph 22 and section 1-08.10(1) do not conflict in the way asserted by the City. Paragraph 22 defines one act of default, and section 1-08.10(1) identifies additional acts of default. Paragraph 22 is silent about termination procedure and opportunity for cure. This silence does not place paragraph 22 in conflict with section 1-08.10(1)'s procedural and cure provisions. Instead, section 1-08.10(1) supplements paragraph 22 by providing specific procedures and timelines for action. The City's own conduct before termination shows that it understood this to be the relationship between these provisions. Its notices and correspondence with Conway repeatedly referenced section 1-08.10(1) and never relied on paragraph 22. These notices also identified a cure period. Only in litigation did the City discover a conflict.

The City also claims Conway had to remedy all asserted breaches within 15 days to satisfaction. The contract allows the City to terminate "if the [c]ontractor performs [w]ork which deviates from the [c]ontract, and neglects or refuses to correct rejected [w]ork." It also states that once the City gives notice, Conway "is to remedy the breach within 15 calendar days after the notice is sent . . . [and] [i]f the remedy does not take place to the satisfaction of the [c]ontracting agency, the [e]ngineer may . . . [t]erminate

---

[7] Kelley v. Tonda, 198 Wn. App. 303, 311, 393 P.3d 824 (2017) (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).
[8] Martin v. Smith, 192 Wn. App. 527, 532, 368 P.3d 227 (2016).
[9] Kelley, 198 Wn. App. at 312.

the [c]ontract." So, the City was only justified in terminating the contract for rejected work if Conway neglected or refused to correct the rejected work. The trial court used the appropriate test in determining whether the City was justified in terminating Conway for rejected work.

As the City notes, the "neglect or refuses to correct" provision applies only to rejected work breaches and not violation of law breaches. So, Conway had 15 days to cure the safety breach. But, to the extent the trial court used the wrong test for the safety violation, that error was harmless because Conway cured the only safety breach within 15 days.

Termination Justification

The City claims that once it demonstrated that Conway defaulted due to the safety violation, the liability phase of the case should have ended.

In contract disputes like this one, where the Government is a party, the Government has the burden of proving whether termination of a contract for default was justified.[10]

The trial court found the City was unjustified in terminating Conway because Conway addressed the safety issues when it worked directly with L&I:

> Finding of Fact No. 59: While the City complains of ongoing safety concerns existing on the site, **at the time of termination the unsafe trench detailed in these findings was being addressed** during the suspension period between Conway and the Department of Labor and Industries. In Remedy Item No. 9 of Exhibit 44, **the City essentially deferred the safety issue to the Department of Labor and Industries,** stating, "If the contractor does not correct the deficiency to L&I's satisfaction, the City will suspend operation until the work site is deemed safe again by L&I." After at least two inspections of the Project site and meetings with Conway's principals, the Department of Labor and Industries perceived no ongoing safety issues. In

---

[10] Lisbon Contractors, Inc. v. U.S., 828 F.2d 759, 765 (Fed. Cir. 1987).

Exhibit 119, the City admitted there were no further safety issues on site after March 9, 2016. **This item consequently is found to have been cured by the end of the suspension period**.

After the City provided notice to Conway, that it had breached the contract, Conway had 15 days to cure the identified safety breach. It did so by working with L&I to address the safety concerns and then by notifying the City about its actions.

Because L&I detected no ongoing safety issues after the original safety issue, which Conway addressed, the court found any breach by Conway was resolved. Substantial evidence established that Conway resolved the safety regulation breach, which the City asserts justified termination.

Subsequently Discovered Evidence

The City next claims it can justify termination with subsequently discovered evidence. It relies on Mega Construction Company, Inc. v. United States[11] as support for the claim that L&I's citation for the safety violation after the City terminated the contract justified the decision to terminate. But, Mega Construction explains how the termination was justified because of not only discovered violations after the termination, but because of the violations discovered before the termination.[12]

In this case, the trial court held that Conway cured the pre-termination breach within 15 days of notice. So, any post-termination violations are irrelevant and Mega Construction is not analogous.

---

[11] 29 Fed. Cl. 396 (Fed. Cl. 1993).
[12] 29 Fed. Cl. at 421-22.

Good Faith

The City also asserts that because Conway breached a specific condition of default, the only remaining questions were whether the City was satisfied with Conway's performance and whether the City exercised good faith in its exercise of discretion. It claims the trial court made no finding that the City acted in bad faith. But, the trial court found that Conway was not in breach at the time of termination, so the trial court did not err in failing to make a good faith effort analysis.

Set-Off for Defective Work

The City next claims the trial court should have considered claims for replacing the defective work it discovered after it terminated Conway. The City asserts the contract "specifically allows a set-off for defective work, even where the termination is one for convenience."

The relevant contract provision states:

> The total payment for any one item in the case of a deletion or partial termination shall not exceed the Bid price as modified by approved change orders less the estimated cost (including overhead and profit) to complete the Work and less any amount paid to the Contractor for the item.

This contract provision applies only to cases involving deletion, such as when the "[e]ngineer may delete [w]ork by change order," or partial termination. Here, the City completely terminated the entire contract, so no "deletion" or "partial termination" occurred. This provision does not apply.

The City also claims the trial court refused to consider claims for replacing defective work first discovered after the City terminated Conway. The City frames this defect issue as a timing issue. But, the trial court did not rely on timing of discovery to reject this claim. It rejected it because the City did not provide Conway an opportunity to

cure, or timely investigate, the alleged defects as required by the contract.[13] No Washington case law addresses whether a breaching party is entitled to a set-off when it did not give the other non-breaching party an opportunity to cure alleged defects. But, Shelter Products, Inc. v. Steelwood Construction, Inc.[14] addressed this issue. We find this case persuasive and follow it here. There, the court held that a breaching party is not entitled to a set-off for allegedly defective work upon the breaching party's termination for convenience where the breaching party did not give the other party notice of defects and opportunity to inspect, cure, or complete work.[15]

The City acknowledges that it did not give Conway an opportunity to cure or investigate these defects. And, the City provides no persuasive reason why we should not follow Shelter Products.[16] The City's assertion that Ducolon Mech. Inc., v. Shinstine/Forness, Inc. entitles it to set-off its costs for Conway's defective work lacks merit because both parties breached the contract.[17] Here, only the City failed to cure a breach, so Ducolon is not analogous or helpful.

Because the City breached by terminating the contract, and did not provide Conway an opportunity to cure alleged defects, the City was not entitled to its claimed post-termination damages and costs.

---

[13] The contract provides that upon Conway performing work that deviates from the contract that it neglects or refuses to correct, it has 15 days to cure. So, this contract provision requires the City to inform Conway of defects and give them an opportunity to cure.

[14] 257 Or. App. 382, 402, 307 P.3d 449 (2013).

[15] Shelter Products, 257 Or. App. at 398-99.

[16] The trial court cited to Shelter Products in its conclusion of law that the City's claim for post-termination damages and costs are denied.

[17] 77 Wn. App. 707, 713, 893 P.2d 1127 (1995).

Attorneys' Fees

The City asserts the trial court should not have awarded Conway attorney fees because Conway was required to make an offer of settlement. As a result, Conway is not the prevailing party for purposes of awarding fees. We agree.

An appellate court reviews de novo whether the prevailing party was entitled to attorney fees.[18] RCW 39.04.240(1) states, "[t]he provisions of RCW 4.84.250 through 4.84.280 shall apply to an action arising out of a public works contract in which the state or a municipality, or other public body that contracts for public works, is a party." This statute also creates two exceptions (1) the maximum dollar limitation in RCW 4.84.250 does not apply, and (2) the time period for serving offers of settlement on the adverse party is not less than 30 days and not more than one 120 days after completion of the service and filing of the summons and complaint.

RCW 4.84.260 states, "The plaintiff . . . shall be deemed the prevailing party . . . when the recovery, exclusive of costs, is as much as or more than the amount offered in settlement by the plaintiff . . . as set forth in RCW 4.84.280."[19] When a party does not make an offer of settlement in a lawsuit involving a public works contract, it cannot recover attorney fees.[20]

---

[18] Ethridge v. Hwang, 105 Wn. App. 447, 459-60, 20 P.3d 958 (2001).

[19] RCW 4.84.260.

[20] Hertz v. Riebe, 86 Wn. App. 102, 107, 936 P.2d 24 (1997); Filipino American League v. Carino, 183 Wn. App. 122, 130, 332 P.3d 1150 (2014) ("the unambiguous language of RCW 4.84.290 authorizes an award of fees on appeal only where the party is eligible for an award under RCW 4.84.250. RCW 4.84.250 and RCW 4.84.260 required the League to make an offer of settlement to become a prevailing party. The League made no such offer. Therefore, it is not the prevailing party within the meaning of RCW 4.84.250 and RCW 4.84.290.").

Conway claims that "[i]t was not necessary for Conway to make an offer of settlement under RCW 39.04.240 in order to obtain a fee award" because "RCW 39.04.240 is not an exclusive remedy." Conway asserts the contract's fee provision provides a different remedy than RCW 39.04.240. Conway relies on King County v. Vinci Construction Grands Projects/Parsons RCI/Frontier-Kemper, JV.[21]

The City asserts this response is precluded by RCW 39.04.240(2), which states:

The rights provided for under this section may not be waived by the parties to a public works contract that is entered into on or after June 11, 1992, and a provision in such a contract that provides for waiver of these rights is void as against public policy. However, this subsection shall not be construed as prohibiting the parties from mutually agreeing to a clause in a public works contract that requires submission of a dispute arising under the contract to arbitration.

The City claims this statute voids the parties' contract to the extent it waives the City's statutory right, under RCW 4.84.260, to receive an offer of settlement before being exposed to an attorney fee claim. Conway does not respond directly to this argument.

King County v. Vinci does not support Conway's position. There, our Supreme Court considered whether RCW 39.04.240(1) abrogated a common law right of attorney recovery available in certain types of insurance litigation. The court did not address any argument involving the anti-waiver provisions of RCW 39.04.240(2).

Our legislature has determined that government entities should receive an early opportunity to settle public works contract litigation by requiring an early settlement offer from a claimant who wishes to preserve a claim for attorney fees. And, the legislature has declared void any contract provision waiving the government entity's right to receive an early settlement offer before being exposed to an attorney fee claim as part of the

---

[21] 188 Wn.2d 627, 398 P.3d 1093 (2017).

consequences of losing a lawsuit involving a public works contract. The statute is unambiguous. So, because Conway did not make a timely settlement offer, it was not a prevailing party for purposes of awarding attorney fees. We reverse the trial court's fee award to Conway.

<u>The City Attorney's Fees</u>

The City requests attorney fees if it prevails on the contract termination issue. Because it does not, we deny the City's request for attorney fees.

**CONCLUSION**

We affirm in part and reverse in part. Substantial evidence supports the trial court decision that the City failed to justify its contract termination. Also, the City was not entitled to post-termination damages, because it did not give Conway an opportunity to cure alleged defects.

We reverse on the trial court's award of attorney fees to Conway and otherwise affirm the trial court. We deny attorney fees for both parties on appeal.

_____
Leach, J.

WE CONCUR:

_____                    _____

13