IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GREENBROOKE II CONDOMINIUM ASSOCIATION, | ) ) ) | No. 79892-8-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| BRANDI JEAN DALSEG and JOHN DOE DALSEG, wife and husband, and their marital community, | ) ) ) ) | |
| Appellants, | ) ) | |
| and | ) ) | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

SMITH, J. — Brandi Dalseg appeals an order granting summary judgment and a decree of foreclosure in favor of Greenbrooke II Condominium Association. Dalseg raises a number of arguments in support of reversal. But she does not establish that a genuine issue of material fact exists with regard to the amount of any delinquent assessments and fees, her obligation to pay them, or the Association's right to enforce that obligation through judgment and foreclosure. Dalseg also fails to establish that the trial court exhibited reversible bias or erred by not allowing her to present testimony at the summary judgment hearing. Therefore, we affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

In October 2018, the Association sued Dalseg (including her marital community), requesting a judgment for past due assessments and a decree of foreclosure.[1]

In February 2019, the Association moved for summary judgment. According to an accompanying declaration from Miranda Mahoney, the Association's manager, Dalseg was the owner of unit 40 of the Greenbrooke II Condominium (Greenbrooke II) in Snohomish County. Also according to Mahoney, the condominium declaration for Greenbrooke II "requires all unit owners to pay their proportional share of common expenses through assessments that are set annually by the Association's board of directors and ratified by owners." Mahoney declared that Dalseg "became behind in assessment payments and ha[s] failed to make payments necessary to bring [her] account current." Specifically, Mahoney declared that "[t]hrough March 1, 2019, . . . there will be due and owing from . . . [Dalseg] . . . the amount of $3,970.04 including monthly assessments and other charges. In addition, interest imposed pursuant to the Declaration . . . has also been assessed . . . in the amount of $486.80 through March 1, 2019." (Emphasis omitted.) Attached as an exhibit to Mahoney's declaration was an account ledger detailing the outstanding balance on Dalseg's account, including for unpaid monthly assessments for the months of April 2018 through March 2019. Also attached to

_____

[1] Mortgage Electronic Registration Systems Inc. was also named as a defendant in the lawsuit but was later dismissed and is not a party to this appeal.

Mahoney's declaration were excerpts from Greenbrooke II's condominium declaration, including the following provisions regarding payment of assessments, the Association's entitlement to a lien for unpaid assessments, and the Association's collection of assessments:

> 13.10  Payment of Assessments.  General assessments shall be due on or before the first day of each month.  Each Owner shall pay or cause to be paid all Assessments against the Unit to the treasurer or designated agent of the Association.  Any Assessments not paid by the fifteenth day of the calendar month in which it is due shall be delinquent and subject to late charges, interest charges, and collection procedures as provided in Article 14.
>
> . . . .
>
> 14.1  Assessments Are a Lien; Priority.  The Association has a lien on a Unit for any unpaid Assessment levied against a Unit from the time the Assessment is due. . . .
>
> 14.2  Lien May Be Foreclosed; Judicial Foreclosure.  The lien arising under this Article may be enforced judicially by the Association or its authorized representative in the manner set forth in RCW 61.12. . . .
>
> 14.3  Assessments are Personal Obligation.  In addition to constituting a lien on the Unit, all sums assessed by the Association chargeable to any Unit, including all charges provided in this Article, shall be the personal obligation of the Owner of the Unit when the Assessment is made.  Suit to recover personal judgment for any delinquent Assessments shall be maintainable without foreclosure or waiving the liens securing them.

In her declaration, Mahoney also described an attempted payment that Dalseg made in June 2018:

> On June 26, 2018, . . . Dalseg made a payment through the Association's Mutual of Omaha Bank web payment portal.  An error with Mutual of Omaha Bank's web portal caused the payment to be refunded to . . . Dalseg on June 27, 2018. . . . Dalseg was notified by Mutual of Omaha Bank of this error.

3

Attached as an exhibit to Mahoney's declaration was a copy of an email from

Mutual of Omaha Bank to a person named Dawn Miller, in which the bank wrote:

> Please accept our apologies.  Our online payment site experienced
> system errors on June 25 and June 26, 2018 resulting in inaccurate
> information sent to resident's [sic] regarding their payments.
> Residents were notified of the error with the communications below.
>
> . . . .
>
> **Resident Communication for One-Time Payments**
> **Important Notice Regarding Your Payment**
> Please accept our apologies.  An error occurred when you
> attempted to make a payment to your community association
> between June 25, 2018 and June 26, 2018.
>
> **ACTION REQUIRED**
> Please make another payment to your community association.
>
> You received a decline notice from MutualofOmahaBank.com,
> however, the payment was actually processed.  To prevent any
> further errors, we refunded the payment amount to your card.
> Refunds can take up to five (5) business days to be applied to your
> card.
>
> If you made a payment using eCheck or sent a payment via the
> mail, after receiving the decline notice, you do not need to make an
> additional payment.
>
> Please check your card account over the next three to five days to
> ensure you receive the refund issued to your card.
>
> We apologize for the inconvenience and we are making every effort
> to ensure your payments are processed as scheduled without
> interruption.

The Association noted its summary judgment motion for hearing on April

3, 2019.  On March 28, 2019, Dalseg filed a declaration form in response to the

Association's motion.  On the first page of the form, after the preprinted text

stating, "I declare," Dalseg wrote, "Please see Attached 4 pages.  Total of 6

pages."  Dalseg signed the final page of the form under penalty of perjury.

Attached to the form was a written response in which Dalseg wrote,

> This is in response to a motion for summary judgment I received on 3/1/2019.
>
> On June 26th, I made a payment in the amount of $714.20 through the Agynbyte website portal, hosted by the Mutual of Omaha Bank. On June 27th, the $714.20 was returned to my bank account. On June 28th, my boyfriend went to Agynbyte [the Association's property management company] and talked to Karina Ordukhanova to make payment. She said she could not take the payment and the manager, Miranda Mahoney, would call him or myself. My boyfriend left his name and number. Karina refused to take a check or issue a receipt.

In her response, Dalseg described presuit efforts made by herself and her boyfriend to discuss payment either with Agynbyte or with the Association's law firm:

- June 28, 2018 2:38 pm – Boyfriend went to Agynbyte's old office and talked to Karina. Karina stated that no payment could be taken and that a manager would call him or myself.

- July 10, 2018 3:18 pm – Boyfriend went to Agynbyte's old office and talked to Karina. Karina refused to give the name and contact info for the manager and refused to take the payment.

- July 17, 2018 – Brandi talked to Kristina [of the Association's law firm] and was told could not take payment over the phone or in person.

- July 31, 2018 – Boyfriend went to [the Association's law firm and] talked to Phillip Curiale for balance to settle. Phillip stated he would call him back. Phillip did not know the balance and would get back to boyfriend. No return call was ever received from Phillip.

- August 7, 2018 – Boyfriend went to Agynbyte's old office. Talked to Karina and asked to settle balance. Boyfriend was told the attorney would handle everything. He left his contact info for the manager, Miranda Mahoney. No call was received from Miranda Mahoney.

5

Dalseg also described efforts made to settle the debt after the lawsuit commenced, including the following:

- October 26, 2018 – Brandi and boyfriend went to [the Association's law firm] to serve paperwork and asked Patrick McDonald about settling the balance. He stated he had no idea about the case. Patrick stated he would have to get back to us; he had no knowledge of the case since Phillip had left the law firm. No communication was received from [the Association's law firm] until March 1, 2019, when the Motion for Summary Judgment and Foreclosure Decree was received by my neighbor, who found it in their mailbox. My neighbor then delivered it to me.

  . . . .

- March 25, 2019 . . . 8:30 pm – Tony [the Association's president] spoke with boyfriend and myself. He apologized for the huge inconvenience that this has caused. Tony said he would speak with Brian or Corey at Agynbyte, as well as Patrick at [the Association's law firm]. Tony said he would encourage them to reduce fees to get this resolved. We asked Tony if we could pay the monthly dues owed in person or by mail. His response was that he could not take the payment.

  . . . .

- March 27, 2019 7:26 pm – Tony called boyfriend and myself and said that [the Association's law firm] and Agynbyte said total amount owed with monthly dues and attorneys fees was $6,000.00, plus additional attorney's fees not yet calculated. Tony said to pick up a statement and agreement from Dawn Miller at Agynbyte on March 28th.

Finally, Dalseg wrote,

I received a letter dated July 6, 2018 from Agynbyte, the letter stated that I was being sent to collections for $944.00 and that I must contact the [Association's] law firm . . . . I tried to contact the management company to discuss what happened, since I had made the payment. I was then told that they could no longer discuss this with me.

Several phone calls and contacts were made with [the Association's law firm] by myself and my boyfriend. During these discussions it was stated that the bank, Mutual of Omaha, sent me

6

an email.  I never received an email from Mutual of Omaha, Agynbyte or [the] Association.  In addition, per the . . . Association CC&Rs, email is not a legal form of communication per Section 23.1.  The first time I read the email from Mutual of Omaha was when [the Association's law firm] mailed it to me on August 14, 2018.

The email states, in part, that "You received a decline notice from MutualofOmahaBank.com, however, the payment was actually processed."  After reviewing my bank statements, I saw that the amount [o]f $714.20 was taken out of my account twice on June 26, 2018.  The amount of $714.20 was then returned to my account on June 27, 2018.  I made fair and reasonable attempts to pay the debt.

Since this time, we have exhausted every avenue to settle the debt.  However, neither the attorney's office nor the management company nor [the] Association was willing to take payment.  In addition, the management company has not allowed me to continue to make my monthly . . . dues in the amount of $203.85 per month.  This has drastically increased the amount I now owe.

At this time, the amount I owe the . . . Association is $2309.80, plus $150 late fee for the months of April, May and June.  $679.00 for 4/1/2018 – 7/1/2018 (monthly payment of $169.75) and $1630.80 for 8/1/2018 – 3/1/2019 (monthly payment of $203.85).  I should not be responsible for any other fees.  I am requesting the court to settle this due to the error that was made by Mutual of Omaha.  This error was communicated to Agynbyte by email on June 27, 2019.  However, this was never directly communicated to me.  Instead, Agynbyte immediately sent my account to collections.  This all could have been avoided with some communication to me from Agynbyte.

The Association filed its reply on April 2, 2019.  The Association argued that Dalseg's response was untimely, not supported by admissible evidence, and "comprised almost entirely of hearsay in violation of ER 801."  The Association also argued that Dalseg "never establishe[d] that she has personal knowledge of much of what she states."  The Association asserted that Dalseg "admit[ted] she knew as early as August 14, 2018 that the June 26, 2018 attempted payment

was returned to her bank account in full on June 27, 2018" and that Dalseg "admit[ted] no other payments were remitted to the account." The Association argued that "[t]aken as a whole, the essence of [Dalseg]'s response alleges without providing any evidence to support the claim that the account is delinquent because [the Association] refuses to accept payment." The Association also argued that Dalseg "does not dispute a single, specific charge to her account" and that, accordingly, summary judgment was proper. With its reply, the Association filed an updated account ledger for Dalseg's account and a declaration stating that "[t]aking into account all payments and credits, the remaining balance owed for the account is as follows: Principal - $4,026.84, Interest - $579.23, Legal - $7,235.00 (including estimated charges of $687.50 for preparing for and attending the summary judgment hearing), and Costs - $657.00." (Emphasis omitted.)

On April 3, 2019, the trial court entered an order granting the Association's motion for summary judgment, entering judgment against Dalseg for a principal amount of $4,026.84, plus interest, attorney fees, and costs, validating the Association's lien against Dalseg's condominium unit, and authorizing foreclosure of the Association's lien "in the event of nonpayment of the judgment . . . upon its entry." Dalseg appeals.

ANALYSIS

Order Granting Summary Judgment

Dalseg contends that the trial court erred by granting the Association's motion for summary judgment. We disagree.

"'The object and function of summary judgment procedure is to avoid a useless trial. A trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact.'" Kelley v. Tonda, 198 Wn. App. 303, 310, 393 P.3d 824 (2017) (quoting Barber v. Bankers Life & Cas. Co., 81 Wn.2d 140, 144, 500 P.2d 88 (1972)). "'A material fact is one upon which the outcome of the litigation depends.'" Kelley, 198 Wn. App. at 310-11 (quoting Balise v. Underwood, 62 Wn.2d 195, 199, 381 P.2d 966 (1963)). "Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015) (footnote omitted).

"In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact." Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989)). "Once the moving party meets its burden of showing there is no genuine issue of material fact, the nonmoving party must set forth specific facts rebutting the moving party's contentions." Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 169, 273 P.3d 965 (2012). "The nonmoving party may not rely on speculation, argumentative assertions, 'or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts

that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.'" Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

We review summary judgment orders de novo, meaning that we give no deference to the trial court's decision. Keck, 184 Wn.2d at 370. We also "consider[ ] the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Keck, 184 Wn.2d at 370. However, we "will consider only evidence and issues called to the attention of the trial court." RAP 9.12. Additionally, we do not consider inadmissible evidence in reviewing a summary judgment order. Larson Motors, Inc. v. Snypp, 3 Wn. App. 2d 127, 136, 413 P.3d 632, review denied, 191 Wn.2d 1013 (2018).

Here, as the moving party, the Association satisfied its initial burden to show the absence of an issue of material fact. Specifically, it provided a sworn declaration from Mahoney alleging that Dalseg owned unit 40 in Greenbrooke II, and attached to Mahoney's declaration were excerpts of the Greenbrooke II condominium declaration setting forth each owner's obligation to pay assessments. Those excerpts provide, among other things, that assessments are due on or before the first day of each month and delinquent on the 15th day of the month, the Association has a lien for any unpaid assessments from the time they are due, the Association may enforce that lien through foreclosure, each assessment is the personal obligation of the owner when the assessment is made, the Association may file suit to recover personal judgment for any

10

delinquent assessments, the Association may impose late charges and interest on delinquent assessments, and the Association is entitled to costs and reasonable attorney fees for collection of delinquent assessments. Additionally, Mahoney declared that Dalseg was "behind in assessment payments and ha[s] failed to make payments necessary to bring [her] account current." To that end, attached to Mahoney's declaration was an account ledger detailing the amounts due and owing from Dalseg, including monthly assessments from April 2018 through March 2019.

In short, the Association satisfied its initial burden to show that Dalseg had an obligation to pay the amounts described in Mahoney's declaration, that Dalseg failed to comply with that obligation, and that the Association was entitled to enforcement through judgment and foreclosure. Accordingly, to overcome summary judgment, Dalseg needed to bring forth specific facts to rebut the Association's contentions. We conclude, for the following reasons, that Dalseg failed to do so.

First, almost all of Dalseg's response to the Association's motion for summary judgment was inadmissible. Specifically, Dalseg's response described at length the efforts that her boyfriend made to discuss payment with Agynbyte, the Association's law firm, and the Association president. But affidavits supporting and opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." CR 56(e). Dalseg's response did not establish that she had

11

personal knowledge of *her boyfriend's* interactions with other parties, and thus, we cannot consider her descriptions of those interactions. See ER 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Second, the remainder of Dalseg's response failed to bring forth specific facts to rebut the Association's contentions.[2]  Rather, her response in fact acknowledged that she received a letter dated July 6, 2018, notifying her that her account was being sent to collections.  She did assert that she "ha[d] exhausted every avenue to settle the debt," that "neither the attorney's office nor the management company nor [the] Association was willing to take payment," and that she "made fair and reasonable attempts to pay the debt."  But these argumentative assertions establish, at most, that Dalseg engaged in efforts to settle with the Association.  They do not constitute specific facts sufficient to rebut the Association's contention that Dalseg failed to pay the full amount she owed.  Indeed, and although Dalseg also asserted that Agynbyte "ha[d] not allowed [her] to continue to make [her] monthly . . . dues in the amount of

---

[2] The Association contends that Dalseg's response was untimely and not supported by affidavits and, thus, *none* of Dalseg's response should be considered.  But the Association provides no reasoned argument that the trial court abused its discretion to the extent it considered Dalseg's response, or that we may not consider it on appeal.  See Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").  Furthermore, as described in the facts above, Dalseg's response was incorporated by reference into a declaration form that was signed under penalty of perjury.  Therefore, we reject the Association's contention inasmuch as it pertains to those parts of Dalseg's response that describe matters fairly within her personal knowledge.

$203.85 per month," she at no point stated that she tendered any monthly payments to the Association, much less that she attempted to pay the full amount due.[3]  Similarly, although Dalseg asserted in her response that she owed the Association late fees only for April, May, and June 2018 and "should not be responsible for any other fees," she did not explain why—given the undisputed fact that she had not paid her assessments from July 2018 forward—the Association was prohibited from imposing fees as expressly contemplated by the Greenbrooke II condominium declaration.  For these reasons, we conclude that Dalseg failed to raise a genuine issue of material fact with regard to the amount of any delinquent assessments (and associated fees), her obligation to pay them, or the Association's right to enforce that obligation through judgment and foreclosure.  Thus, the trial court did not err by granting summary judgment and a decree of foreclosure in favor of the Association.

Dalseg disagrees and points out that she attempted to become current on dues and fees for April, May, and June 2018 by submitting a payment via Agynbyte's payment portal on June 26.  She also asserts, as she did in her response below, that she never received an email from Mutual of Omaha informing her that there was a problem with the payment and that, in any event,

---

[3] The July 6, 2018, letter that Dalseg acknowledged receiving instructed Dalseg to direct all future communications and payments to the Association's law firm.  To this end, Dalseg argues in her opening brief on appeal that "[n]o payments were accepted for monthly condominium association dues by [the Association's law firm], until [she] and her boyfriend demanded a meeting with . . . the condominium association president, and [the Association's attorney] on September 6, 2019."  But because these assertions were not brought to the attention of the trial court in the form of an affidavit, we cannot consider them on appeal.  RAP 9.12.

email notice was not permitted under Greenbrooke II's condominium declaration. But Dalseg does not explain how the alleged absence or invalidity of the notice changes the fact that the Association was not timely paid or that the Association was entitled to commence enforcement under Greenbrooke II's condominium declaration. Indeed, section 13.10 of the declaration expressly allows the Association to commence collection procedures for any assessment "not paid by the fifteenth day of the calendar month in which it is due," without regard for whether the owner made a good faith *effort* to pay.[4] In short, even assuming that Dalseg did not receive notice or that the notice was invalid, that fact does not require reversal.[5]

Dalseg next asserts that during the hearing on the Association's motion for

---

[4] We are not unsympathetic to Dalseg's apparent contention that it was unfair for the Association to commence collection efforts just days after Dalseg would have become current on her account had her payment been properly processed by Mutual of Omaha. But to the extent Dalseg contends that these facts justified relief below or require reversal based on principles of equity or another legal theory, that contention is not adequately briefed to warrant consideration. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument"). Additionally, and although Dalseg asserts in her reply that "[p]ro [s]e motions are generally held to less stringent standards," that assertion is not correct. Rather, pro se litigants are held to the same standards as attorneys. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

[5] Although we conclude that the issue of whether Dalseg received an email from Mutual of Omaha is not material, we note that the Association did not produce any competent evidence that Dalseg in fact received the email. Specifically, the Association relies on Mahoney's declaration to contend that "the Association *did* provide evidence that the email was sent to Dalseg." But Mahoney's declaration establishes, at most, that someone named Dawn Miller received an email from Mutual of Omaha in which Mutual of Omaha indicated that it had sent a notification email to residents. In other words, the evidence on which the Association relies consists of inadmissible hearsay and matters outside of Mahoney's personal knowledge.

summary judgment, "the trial court refused to allow . . . Dalseg's boyfriend to speak during the case; however, the judge stated that she would be able to call a witness." Dalseg further avers that "[s]everal times during the case, she asked to call her witness and was denied or not even acknowledged each and every time." She asserts that "[i]n addition, the trial court directed a majority of the time towards [the Association's attorney]. . . . Dalseg was not afforded or granted an equal or even similar amount of time to answer question[s] or present her side of the case." In short, Dalseg contends that reversal is required because the trial court exhibited bias inasmuch as it "did not take into account both sides of the case" and violated CR 43 by denying Dalseg the right to have a witness testify at the summary judgment hearing.

But Dalseg did not provide this court with a report of proceedings for the hearing on the Association's motion for summary judgment.[6] Accordingly, what the trial judge did or did not do during the hearing is a matter outside the record, and we cannot consider it on appeal. See Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 786, 819 P.2d 370 (1991) (an appellate court will not consider matters of fact that have no support in the record, even those matters that may be entirely accurate); Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988) (appellant has burden of providing an adequate record on appeal).[7]

---

[6] Dalseg filed a statement of arrangements stating that "[t]here is no transcript available from the hearing on April 3, 2019." But it was Dalseg's burden to have a transcript prepared, whether in the form of a verbatim report of proceedings, a narrative report of proceedings, or an agreed report of proceedings. RAP 9.1(b).

[7] The Association does not dispute that its counsel was present at the hearing. Accordingly, although we agree that Dalseg's failure to provide an

Furthermore, even if the facts *were* as Dalseg alleges, we would not be persuaded that the trial court exhibited reversible bias merely by deciding to allocate more time to the Association and not allowing Dalseg to present oral testimony at the hearing. To be sure, Dalseg is correct that "an unbiased judge is an essential element of due process." In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). But "the trial court is presumed to perform its functions regularly and properly without bias or prejudice." Tatham v. Rogers, 170 Wn. App. 76, 96, 283 P.3d 583 (2012). Accordingly, "[t]he party seeking to overcome that presumption must provide specific facts establishing bias." Davis, 152 Wn.2d at 692. To this end, "[j]udicial rulings alone almost never constitute a valid showing of bias." Davis, 152 Wn.2d at 692. Instead, the party asserting bias "'must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the decision maker.'" Tatham, 170 Wn. App. at 96 (quoting In re Pers. Restraint of Haynes, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000)). Here, Dalseg would have us infer bias based solely on the trial judge's unequal allocation of time and his decision not to allow Dalseg to present oral testimony, and without any evidence of a personal or pecuniary interest on the part of the trial judge. We would decline to do so. Cf. In re Estate of Hayes, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015) (rejecting appellant's bias argument where appellant "fail[ed] to establish . . . that the trial judge held any

adequate record is fatal to her bias argument, the Association is disingenuous to argue that "Dalseg's failure to perfect the record leaves . . . the Association completely in the dark as to whether the trial court did what Dalseg alleges, and if so, what the trial court's reasoning was and the context within which the decision was made."

direct, personal, substantial pecuniary interest, financial interest falling short of what would be considered personal and direct, or any personal stake at all").

We also are not persuaded by Dalseg's contention that the trial court violated CR 43 by not allowing Dalseg to present witness testimony at the hearing. "In Washington, a trial court may allow oral testimony at a summary judgment proceeding." Landberg v. Carlson, 108 Wn. App. 749, 754, 33 P.3d 406 (2001). However, "a trial court's decision whether to allow oral testimony at a summary judgment hearing is discretionary." Landberg, 108 Wn. App. at 754. And "[l]ogic and common sense require a ruling in advance of a summary judgment hearing to permit oral testimony" so that the court can "consider why affidavit, deposition, interrogatory, or other similar evidence is unavailable and whether a continuance may be necessary." Landberg, 108 Wn. App. at 756. Because there is no evidence in the record indicating that before the hearing Dalseg requested to present oral testimony, we cannot say that the trial court abused its discretion by not allowing oral testimony at the hearing. See Landberg, 108 Wn. App. at 755 (holding that trial court did not err in rejecting oral testimony at summary judgment hearing where "[n]o notice was given beforehand that [the nonmoving party] intended to rely on oral testimony").

Dalseg next points out that in its complaint, the Association incorrectly identified itself as "*SU*GREENBROOKE II CONDOMINIUM ASSOCIATION." (Emphasis added.) She also points out that although the complaint was filed in Snohomish County and contains a legal description of Dalseg's unit stating that it was situated in Snohomish County, the complaint stated that "Venue of this

action is proper in *King County*, Washington, where the real property in question is located." (Emphasis added.) But there is no indication in the record that Dalseg raised these abnormalities below, and Dalseg does not explain how these apparent scrivener's errors would have changed the outcome of the litigation below, much less why they entitle her to relief on appeal. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court."). Accordingly, they do not warrant reversal.

As a final matter, Dalseg relies for the first time in her reply on RCW 64.34.304(k) and RCW 64.90.515 to contend that reversal is required.[8] But "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). This is especially true here, where Dalseg did not rely on these statutes below and, thus, the Association would be prejudiced if we considered these statutes based solely on Dalseg's reply in this appeal. Accordingly, we decline to consider whether reversal is required based on RCW 64.34.304(k) or RCW 64.90.515. Cf. Bergerson v. Zurbano, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018) ("[A] court should exercise its discretion to reach an appeal's merits unless there are compelling reasons not to do so, such as

---

[8] RCW 64.34.304(k) provides that a condominium association may "[i]mpose and collect charges for late payment of assessments . . . and, after notice and an opportunity to be heard by the board of directors . . . , levy reasonable fines in accordance with a previously established schedule thereof adopted by the board of directors and furnished to the owners for violations of the declaration, bylaws, and rules and regulations of the association." RCW 64.90.515 sets forth requirements for notices provided under the uniform common interest ownership act, chapter 64.90 RCW.

18

prejudice to the respondent."). We also decline to consider the numerous factual assertions that Dalseg makes in her reply brief but does not support with citations to the record, as well as Dalseg's citation to nonbinding out-of-state cases. See RAP 10.3(a)(6) (requiring briefs to include "citations to legal authority and references to relevant parts of the record"); RAP 10.3(c) (making RAP 10.3(a)(6) applicable to reply briefs).

<u>Attorney Fees</u>

The Association requests fees on appeal pursuant to RAP 18.1(a), under which we may award reasonable attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review."

Here, RCW 64.34.364(14) provides that a condominium association "shall be entitled to recover any costs and reasonable attorneys' fees incurred in connection with the collection of delinquent assessments" and that "the association shall be entitled to recover costs and reasonable attorneys' fees if it prevails on appeal and in the enforcement of a judgment." Accordingly, we award the Association its reasonable attorney fees subject to its compliance with RAP 18.1(d) and further determination by a commissioner or clerk under RAP 18.1(f).

We affirm.

WE CONCUR: